No. 24878

William C. Houston v. George A. Manerbino, a Judge of the County Court of the City and County of Denver, State of Colorado and the County Court of Denver County

(521 P.2d 166)

Decided April 22, 1974.

2

Schwartz and Snyder, Jerry N. Snyder, Frank P. Slaninger, for plaintiff-appellant.

James D. McKevitt, District Attorney, Gregory A. Mueller, Assistant, Jarvis W. Seccombe, Chief Deputy, Edward A.

Simons, Deputy, Fred Rodgers, Deputy, for defendants-appellees.

MR. JUSTICE ERICKSON delivered the opinion of the Court.

A criminal summons and complaint was filed in the Denver county court against William C. Houston, charging a violation of the Colorado Obscenity Statute, 1969 Perm. Supp., C.R.S. 1963, 40-28-2. On the same day, the district attorney filed a motion in the county court, supported by a police officer's affidavit, seeking a subpoena duces tecum. The subpoena duces tecum which was served on Houston compelled him to appear in the county court one week later, at a time certain, and to produce the original prints of an allegedly obscene moving picture for the purpose of an adversary hearing. The affidavit, which supported the motion, described in minute and comprehensive factual terms every aspect of the moving pictures and summarized and identified every allegedly obscene act which was portrayed in the films.

Shortly after the subpoena duces tecum was served, counsel for Houston filed a complaint in the district court, pursuant to the provisions of C.R.C.P. 106, seeking to permanently enjoin the county court from procuring the films by means of a subpoena duces tecum. In support of his claim, Houston alleged that a prior adversary hearing to determine whether the films are obscene was constitutionally required before the films could be obtained pursuant to a search warrant or by a subpoena duces tecum. Following an evidentiary hearing and oral arguments, the district court denied relief under C.R.C.P. 106, and Houston appealed to this court. We affirm.

Houston claims that the procedure followed violated the First, Fourth and Fifth Amendments to the United States Constitution. He claims that the police officer who saw the films and summarized the contents of the films in an affidavit

could not provide probable cause for the seizure of the films or to compel their production at an adversary hearing. He also asserts that the production of the moving picture films would violate his Fifth Amendment right against self-incrimination. The affidavit set forth a description of the sex acts which were depicted in the moving picture film which Houston exhibited to a packed house, night after night. Houston would have us declare that he can display his movie for the general public at performance after performance and still deny the court an opportunity to pass upon whether the film is obscene and designed to stimulate the prurient interest of the viewing public.

 Houston was charged with allegedly promoting, presenting, and showing the obscene moving pictures which were described in the subpoena duces tecum. By the use of a subpoena duces tecum, the prosecution sought to obtain the moving picture films for use as evidence at an adversary hearing. At the outset, it is conceded that an adversary hearing is a prerequisite to the seizure of books, films, or other materials that would fall within the protection of the First Amendment's guarantee of freedom of speech and the press. *Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). The issue before us is how material, which is alleged to be obscene, can be obtained for presentation as evidence at an adversary hearing. In our view, the procedures which were followed in the county court meet all constitutional requirements.

Unfortunately, the United States Supreme Court has established a confusing pattern of case law in the obscenity field to guide the courts in the interpretation of the First, Fourth, and Fifth Amendments to the United States Constitution. *See* Rogge, *The High Court of Obscenity, I and II,* 41 Univ. of Colo. L. Rev. 1-59, 201-259 (1969). The decisions of the Supreme Court of the United States in the obscenity field are replete with ill-defined rules of law and procedure which are, at least in part, the product of the differing view of pornography and the First Amendment held by the present and past members of the Supreme Court. Por-

nography has been condemned, recognized as a part of our literature, and at the same time left in a position where scientific and sociological experts have concluded that no harm occurs when freedom is granted to publish and distribute pornography. *See A Book Named John Clelland's Memoirs of a Woman of Pleasure v. Attorney General,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); The Report of the Commission on Obscenity and Pornography (1970).

I.

Protection Afforded by the First Amendment

The First Amendment of the United States Constitution is binding upon the states through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). *See Colo. Const.* Art. II, Sect. 10. Moreover, the First Amendment and Article II, Section 10 of the Colorado Constitution afford protection to all forms of communications, including moving picture films, which attempt to convey a thought or message to another person. *In re Hearings Concerning Canon 35 of the Canons of Judicial Conduct,* 132 Colo. 591, 296 P.2d 465 (1956); *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); *Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952).

Obscene material does not enjoy the protection afforded by the First Amendment. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). However, the mere allegation that a film contains obscene material is not sufficient to remove the protection afforded by the First Amendment, so as to justify seizure of the film. The difficult problem of defining and proscribing obscenity within First Amendment constitutional boundaries obviously requires procedural safeguards to maintain and protect freedom of speech and the press without the prior restraint or the chilling effect of oppressive governmental regulation. *Beauharnais v. Illinois,* 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed.2d 919 (1952); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Gitlow v. New York, supra.* As a result, allegedly obscene materials may not be

subjected to search and seizure by government authorities until an adversary hearing has been held and the materials have been adjudged to be obscene. *People v. Harvey,* 176 Colo. 447, 491 P.2d 563 (1971); *Marcus v. Search Warrant, supra. See A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Bantam Books v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1965); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *Bethview Amusement Corp. v. Cahn,* 416 F.2d 410 (2d Cir. 1969); *Tyrone, Inc. v. Wilkinson,* 410 F.2d 639 (4th Cir. 1969); *Metzger v. Pearcy,* 393 F.2d 202 (7th Cir. 1968). *See also Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 283, 38 L.Ed.2d 128 (1973); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The question of obscenity in the first instance is one of law, not one of facts. *Jacobellis v. Ohio, supra.* As a result, the purpose of the adversary hearing is to decide the obscenity question based upon the tests set forth in the statute before any materials are seized. 1969 Perm. Supp., C.R.S. 1963, 40-28-1. If the court determines, after an adversary hearing, that the materials are obscene, the obscenity issue is for the trier of the fact. *Marcus v. Search Warrant, supra.* If the court concludes that the materials are not obscene as a matter of law, the charges must be dismissed.

## II.

### The Adversary Hearing Procedure

In Colorado, our legislature has spoken and has declared that it is unlawful to promote or possess with intent to promote obscene material or obscene performances. 1969 Perm. Supp., C.R.S. 1963, 40-28-2. A procedure for obtaining purported obscene material for the purpose of an adversary hearing was provided to ensure that every right guaranteed by both the United States Constitution and the Colorado Constitution would be protected. 1969 Perm. Supp., C.R.S. 1963, 40-28-6. *See also Kingsley Books, Inc. v. Brown, supra.*

 In our view, the use of a subpoena duces tecum to obtain the materials for the purpose of an adversary hearing affords an accused the right to have the obscenity issue determined *in limine* before the film is seized. The procedure which was followed permits the use of the film until an adversary hearing is held and guarantees an immediate determination of the obscenity issue. It is important to note that the films which were subject to the subpoena duces tecum in this case were not seized and did not have to be produced until the time that the adversary hearing was set. Some means had to be devised to obtain and preserve the moving picture films for the purpose of conducting an adversary hearing to determine whether the films were obscene as a matter of law. Here, the contents of the films were described in such factual detail in the affidavit which buttressed the motion for the issuance of the subpoena duces tecum that the tests for the issuance of a search warrant were met. *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Lee Art Theatre v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968).

In this case, the procedures were designed to meet the requirements we laid down in *People v. Harvey,* 176 Colo. 447, 491 P.2d 563 (1971). The use of the subpoena duces tecum allowed the films to be used and displayed by Houston until the adversary hearing could be held. If the films were not obscene as a matter of law, Houston would have had the films returned to him. If the films were obscene, the films would be seized. In our view, the procedure followed complied with the mandate cast upon us by *Kingsley Books, Inc. v. Brown, supra,* and the later refinements which the Supreme Court has made. *Lee Art Theatre v. Virginia, supra; Heller v. New York, supra.*

### III.
### Self-Incrimination

 Houston's claim of his Fifth Amendment privilege against self-incrimination, when measured against the facts in this case, is untenable. Self-incrimination under the Fifth Amendment is aimed at preventing a person from being

compelled to testify against himself. The privilege against self-incrimination protects a person against the production of evidence of a testimonial or communicative nature. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In measuring the right of self-incrimination against the right of an accused to an adversary hearing in a pornography case, it would be ludicrous to say that a person can display, promote, and show moving picture films to a standing-room-only audience at performance after performance and then claim that he has the Fifth Amendment as a shield to prevent production of the moving picture films at a hearing which the courts must conduct on the obscenity issue. The Constitution should not be construed in a manner that frustrates the search for truth. The Fifth Amendment cannot be used in an obscenity case where the material in issue has been openly displayed to the public to foreclose the production of the material in issue at an adversary hearing. *See Jones v. Superior Court,* 58 Cal.2d 56, 372 P.2d 919, 22 Cal.Rptr. 879 (1962); *Criminal Discovery and Self-Incrimination: Roger Traynor Confronts the Dilemma,* 53 Cal. L. Rev. 89 (1965).

Accordingly, we affirm.