(Nos. 42652, 42662 cons.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CHARLES GOULD et al., Appellants.

*Opinion filed Jan. 21, 1975.—Rehearing denied March 24, 1975.*

DAVIS, J., dissenting.

Howard T. Savage, of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane and Mark T. Zubor, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendants, Charles Gould, Vincent Geraci, John Geraci, Charles Kimmel, Bernard Kosova, Chiem Blinder, Henry Green and Bill G. Maier, were convicted of the offense of obscenity in the circuit court of Cook County. They appealed to this court under our former Rule 603 (Ill. Rev. Stat. 1969, ch. 110A, par. 603), and as they raised identical questions we consolidated their appeals for argument and opinion.

The defendants were charged in separate complaints with violating the provisions of the obscenity statute (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) by selling obscene magazines. The complaints alleged sales of the following

magazines by the defendants indicated: "Orpheus," Charles Gould; "Luv," "Governess," Vincent Geraci; "Toni," John Geraci; "Governess," "Naked Sensation," "Sugar," Charles Kimmel; "Naked Now," Bernard Kosova; "Late Show," Chiem Blinder.

At the trial of each defendant the following stipulation was entered into by the prosecution and defense: "The arrest of the Defendant was lawful; the sale was made to an officer of the Vice Control Division of the Chicago Police Department; the publication, or publications, involved were in open view; no unlawful seizure is involved; no involvement of any minor is involved; Dr. William Haines, a psychiatrist of the Behavior Clinic of the Cook County Psychiatric Unit in the Criminal Court, if called as a witness, would testify that in his opinion the publication, or publications involved in each case had no redeeming social value; and Dr. Edward Kelleher, a psychiatrist, employed by the Municipal Court would testify, if he were called, that in his opinion, the publication or publications, involved are without redeeming social value; no extravagant advertising or pandering, such as that involved in *Ginsburg v. United States,* 382 U.S. 463, is involved; and that the sale in each case took place in the City of Chicago, County of Cook."

At bench trials the publication or publications involved in each case were admitted into evidence together with the stipulation, and each defendant was found guilty and fined $50.

The defendants' contention is that the magazines are not obscene.

The magazines "Orpheus," "Luv," "Governess," "Toni," "Sugar," and "Kronus" contain photographs of nude females or nearly nude female models dressed only in long stockings and garter belts. In all of the photographs the pubic area is fully exposed and is the focus of the photographs. Each magazine contains photographs that reveal as much as possible of the models' genitals by having

the models pose in contrived and even gymnastic positions and by having their legs spread far apart.

"Naked Now" contains color photographs of nearly nude models wearing long stockings and garter belts. The models' legs are apart in many of the photographs, obviously to focus attention on the genital area. In some of the photos abnormal sexual activity between two females is suggested and in others male models are posed with them, in such a way as to suggest that abnormal sexual activity is imminent.

"Diamond Stud" has photographs of female models posed with their legs spread so that their genitals are clearly revealed and are the focal point of the photographs. In two pictures nearly naked women are shown chained by their wrists while being whipped.

The magazine "Late Show," a publication appearing to be directed to lesbians, consists of pictures of nearly naked female models wearing long black stockings and garter belts. And other pictures explicitly depict the models in groups of two or more engaging in a variety of sexual activities with their genitals often prominently displayed.

The magazine "Naked Sensation" contains photographs of completely naked women and a man. Some pictures show them pictured in groups of two and three engaging in various activities with the genitals often displayed. Other photographs show a male and female model taking a shower, and some show female and male models giving each other massages.

The obscenity statute (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) provides, *inter alia:*

"(a) Elements of the Offense.

A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

(1) Sells, delivers or provides, or offers or agrees to sell, deliver or provide any obscene writing,

picture, record or other representation or embodiment of the obscene; or

* * *

(3) Publishes, exhibits or otherwise makes available anything obscene; or

* * *

(5) Creates, buys, procures or possesses obscene matter or material with intent to disseminate it in violation of this Section, or of the penal laws or regulations of any other jurisdiction; or

(6) Advertises or otherwise promotes the sale of material represented or held out by him to be obscene, whether or not it is obscene.

(b) Obscene Defined.

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.

(c) Interpretation of Evidence.

Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audiences if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience.

Where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that material is being commercially exploited for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance.

In any prosecution for an offense under this Section evidence shall be admissible to show:

(1) The character of the audience for which the material was designed or to which it was directed;

(2) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would

probably have on the behavior of such people;
(3) The artistic, literary, scientific, educational or other merits of the material, or absence thereof;
(4) The degree, if any, of public acceptance of the material in this State;
(5) Appeal to prurient interest, or absence thereof, in advertising or other promotion of the material;
(6) Purpose of the author, creator, publisher or disseminator."

In *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, the Supreme Court, in describing the constitutional guidelines for the regulation of obscene material, said in 413 U.S. at 23-25, 37 L. Ed. 2d at 430-1, 93 S. Ct. at 2614-15:

"*** State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc. v. Dallas, supra,* [390 U.S. 676,] at 682-685, [20 L. Ed. 2d 225, 230-2, 88 S. Ct. 1298, 1302-5 (1968).] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* [408 U.S. 229,] at 230, [33 L. Ed. 2d 312, 315, 92 S. Ct. 2245, 2246 (1972),] quoting *Roth v. United States, supra,* [354 U.S. 476,] at 489, [1 L. Ed.

2d 1498, 1509, 77 S. Ct. 1304, 1311 (1957),] (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. ***

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, *supra*:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

At the direction of the Supreme Court of the United States (413 U.S. 912, 37 L. Ed. 2d 1030, 93 S. Ct. 3046), in *People v. Ridens*, 59 Ill.2d 362 (hereafter Ridens II), we considered further, in light of *Miller,* our earlier judgment in *People v. Ridens,* 51 Ill.2d 410 (Ridens I). We held in Ridens II that our obscenity statute (Ill. Rev. Stat. 1969, ch. 38, par. 11–20) remained constitutional. We construed our statute to incorporate parts of guidelines (a) and (b) of the *Miller* standards (which are set out in the above quotation from *Miller*) and stated that under our statute the third question or guideline which must be considered in determining whether the matter or work is obscene is whether it is "utterly without redeeming social value." We explained that the more restrictive guideline (c), or part (c), of the *Miller* standard, *i.e.,* whether "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value" cannot be used. See Ridens II.

We went on in Ridens II to conclude that the

magazines involved were obscene. In doing so we made reference to our description in Ridens I of the photographs involved. The photographs in *Ridens* were similar in character to the ones we have on this appeal, with the genitals being the focal point of the photographs. 51 Ill.2d 410, 417.

Examining the photographs here against the background of the guidelines or criteria (a), (b) and (c) we have described above, we have no hesitation in judging them to be obscene. Each magazine taken as a whole appeals to the prurient interest and depicts offensive sexual conduct, including lewd exhibitions of the genitals. The magazines are utterly without redeeming social value.

For the reasons given, the judgments of the circuit court are affirmed.

*Judgments affirmed.*

MR. JUSTICE DAVIS, dissenting:

In the case of *People v. Ridens*, 59 Ill.2d 362 (Ridens II), the majority held that the Illinois obscenity statute, section 11—20 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 11—20), and section 2 of the Moline obscenity ordinance are constitutional, as therein construed; that they incorporated parts (a) and (b) of the *Miller* standards; and that the changes in standards from *Memoirs* to *Miller* afford no impediment to the retroactive application of the statute and ordinance. I disagreed with the majority view and conclusion, and filed a dissent thereto.

In this case, the majority affirms the convictions of the defendants herein, who were found guilty in the circuit court of Cook County of the offense of obscenity, and cites with approval Ridens II for the proposition that the Illinois obscentiy statute, in the light of *Miller,* remains constitutional.

For the reasons stated in my dissent to Ridens II, I dissent herein and hereby incorporate said dissent by reference as my dissent to this majority opinion. As

further reason for said dissent and in support thereof, I cite *United States v. Wasserman** (5th Cir. 12/9/74), which appears to hold that *Miller* standards cannot be retroactively applied. *Wasserman* was referred to in 16 Crim. L. Rptr. 2258, the digest of which states:

> *"Digest of Opinion:* Defendants were indicted for mailing obscene material in violation of federal law during the period in which the Roth-Memoirs standards for obscenity were in effect. But at trial the court applied the new test set forth in Miller and its companions. The defendants contend that this was contrary to U.S. v. Thevis, 484 F.2d 1149, 14 CrL 2026, and violated the Due Process Clause.
>
> All the events in Thevis, including trial, took place prior to Miller. This court said that both definitions of obscenity should be considered in order to provide defendants any benefits to be derived from Miller. Thevis has no direct application to the contention of defendants here; but it does offer them some support, in view of the fact that the Thevis court refused to apply retroactively the detriments of Miller. In U.S. v. Jacobs, the Ninth Circuit held that due process bars measuring pre-Miller conduct against Miller's expanded definition of obscenity, and we think Jacobs is correct.
>
> The constitutional prohibition against ex post facto applications of law has no application to judicial interpretations, but the policy considerations behind the constitutional provision are relevant here. See Bouie v. City of Columbia, 378 U.S. 347.
>
> [*Text*] In Bouie, the black defendants entered a white restaurant and refused to leave when asked to do so by the management. The defendants were convicted under a trespass statute which prohibited 'entry upon the lands of another *** after notice from the owner or tenant prohibiting such entry.' The Supreme Court of South Carolina upheld defendants' conviction by interpreting this statute as prohibiting staying upon, as well as entering upon, after notice from the owner or tenant. The United States Supreme Court reversed the conviction and found a violation of the due process clause: 'While such a construction is of course valid for the future, it may not

---

*Now reported at 504 F.2d 1012.

be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal.' 378 U.S. at 362 ***. Thus Bouie recognized the impropriety in punishing a man for acts which were not considered crimes at the time of their commission. ***

Bouie is somewhat distinguishable in that the judicial interpretation in that case expanded the reach of the statute in an extreme and unpredictable way while the judicial opinion with which we are concerned [Miller] merely redefines 'obscenity' in a manner which in no way runs counter to the plain words of the statute. Miller did, however, represent a marked shift in the scope of material deemed to be obscene. Therefore in terms of notice to the defendant and the just application of criminal sanctions, we believe the effect on the defendant is the same. Prior to Miller, a distributor of sexually oriented material could not recognize that material which simply lacked 'serious' literary, artistic, political or scientific value could be constitutionally regulated. As far as such a distributor could determine, he was protected as long as the material was not utterly without redeeming social value. To convict Wasserman for the distribution of material which was protected under the Roth-Memoirs standard violates the rationale underlying Bouie.

We do not go so far as to hold that the application of the Miller standard to Wasserman violated the due process clause. We do hold, however, that such a retroactive application is inappropriate without substantial justification outweighing the above discussed ex post facto considerations. Lacking such justification, the conviction must be reversed. [End Text]"