THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES THOMAS, Defendant-Appellant.

Third District    No. 74-433

Opinion filed April 7, 1976.

Patrick A. Tuite, of Chicago, for appellant.

C. Brett Bode, State's Attorney, of Pekin (James Hinterlong and Russell Boothe, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, proprietor of Del Van Theater at Delavan, was found guilty by a jury of obscenity in violation of section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, 11—20) for exhibiting at his theater on November 2, 1973, for public patronage, the motion picture "Deep Throat." After his post-trial motion was denied, judgment was entered upon the verdict and defendant was sentenced to a term of imprisonment at the county jail for 60 days and to pay a fine of $1,000.

The first error defendant assigns on appeal is that the court erred in refusing to give his instruction 47. That instruction, in defining the offense, charged that the jury must find that the State's proof establishes *three* elements: (a) that the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) that the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) *that the material is utterly without redeeming social value.* The record indicates that the people's instruction no. 14a, given by the court over defendant's objection, wholly failed to inform the jury that foregoing proposition (c)

was an element of the offense charged and that no other given instruction supplied that omission.

■■ The essential elements of the offense of obscenity were previously discussed by this court in a case involving a prosecution of this same defendant for violation of a city ordinance. (*City of Delavan v. Thomas*, 31 Ill. App. 3d 630, 334 N.E.2d 190 (3rd Dist. 1975).) In that opinion, Mr. Justice Stengel, after discussion of the holdings in *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973), and the subsequent decisions in *People v. Ridens*, 59 Ill. 2d 362, 321 N.E.2d 264 (1974), and *People v. Gould*, 60 Ill. 2d 159, 324 N.E.2d 412 (1975), concluded that the elements of the offense in Illinois must include the requirement that the prosecution prove the subject material to be utterly without redeeming social value. (Ill. Rev. Stat. 1973, ch. 38, §11—20(c).) We reconfirm that rule here, and conclude that the failure of the court to so instruct the jury was reversible error.

The State argues that no error was made in failing to include foregoing proposition (c) in the instructions to the jury since this basic social value issue presents a question of law for the court to decide and not one of fact for the jury. Reference is made to the committee notes following IPI Criminal Instruction no. 9.57 to support this proposition. It is then argued that the court here did make a pretrial determination that "Deep Throat" was in fact obscene and that such determination implies that it decided the issue of basic social value as a matter of law. We reject this contention.

The record shows that prior to commencement of these proceedings, the State filed a petition for adversary hearing in October 1973 against defendant to show cause why the public exhibition of the film "Deep Throat" does not constitute probable cause for the offense of obscenity, and why the film should not be impounded as evidence. The court set a date for viewing "Deep Throat" to determine whether its exhibition constituted probable cause for the offense of obscenity and a subpoena duces tecum issued to defendant on October 24, 1973, to produce the film for that purpose. A motion to quash the subpoena was denied, and following a subsequent hearing at which the court viewed the film, an order was entered on November 2, 1973, finding the film obscene and ordering it held pending further proceedings, with leave given the State to file an information charging obscenity.

■■■ This foregoing procedure by the State was a modification of the provisions of section 108—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, §108—12). That statute provides for a pretrial hearing within ten days after a seizure for a determination of whether the material seized is constitutionally protected by the first amendment. The modification whereby a hearing is held *prior* to any seizure has been approved as providing to defendants more protection than section 108—12

confers. (*People v. Brown*, 27 Ill. App. 3d 891, 326 N.E.2d 568 (2d Dist. 1975).) The purpose of both procedures is to satisfy constitutional requirements of the fourth amendment prohibiting, as unreasonable, seizures which constitute a prior restraint of liberties arguably guaranteed by the first amendment to the United States Constitution. "The decision of the court upon * * * [any such preliminary proceeding is * * * not * * * admissible as evidence in any other proceeding *nor shall it be res judicata of any question in any other proceeding.*" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 38, §108—12.) The preliminary adjudication here was merely for purposes of determining probable cause to satisfy the requirement that no material arguably protected by the first amendment shall be the object of prior restraint or seizure except by a "constitutionally sufficient warrant" issued subsequent to a proceeding by which an impartial magistrate has had opportunity to "focus searchingly on the question of obscenity."(*Roaden v. Kentucky*, 413 U.S. 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796 (1973); *Heller v. New York*, 413 U.S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789 (1973).) Thus the finding of the judge in a proceeding designed "to focus searchingly on the issue of obscenity," that probable cause exists for believing that the subject material is not protected by the first amendment, and is obscene and subject to seizure, does not relieve the State of the burden of proving *beyond a reasonable doubt*, to the satisfaction of the jury, the existence of all the essential elements of the offense as construed by the courts, including that the alleged material is wholly without redeeming social value. (*Houston v. Manerbino*, ___ Colo. ___, 521 P. 2d 166 (1974).) "[T]he First Amendment values applicable to the States through the Fourteenth Amendment are [then] adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." *Miller v. California*, 413 U.S. 15, 25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615, (1973); *City of Chicago v. Kimmel*, 31 Ill. 2d 202, 201 N.E.2d 386 (1964); see 50 Am. Jur. 2d *Lewdness, Indecency, and Obscenity* §42 (1970).

■■ Defendant complains that the court erred in not properly instructing the jury as to the geographical standards they were to apply in their deliberations. Citing *People v. Butler*, 49 Ill. 2d 435, 275 N.E.2d 400 (1971), it is argued that in determining whether the material goes substantially beyond customary limits of candor in its description or representation of sexual matters, the jury should have been told that in determining "contemporary community standards" of customary candor, they were not entitled to apply city-wide or county-wide or central Illinois standards, as the State intimated in its arguments, but must apply a statewide community standard. *Miller v. California.*

We agree with this statement of the law and that the prosecutor did frequently argue improperly that local city, county and central Illinois

community standards were acceptable. Objections to these remarks were sustained by the court, however, and the record discloses that the jury was properly instructed that "[i]n judging the motion picture film herein, it is necessary to take into account customary limits of candor, in the *State of Illinois as a whole*, in the description or representation of matters pertaining to sex, nudity or excretion." (Emphasis added.) (Defendant's Instruction No. 13a.) That theme was repeated in defendant's instruction 50 which was also given as follows: "The Court instructs the jury that you may consider the degree, if any, of public acceptance of the movie *in this State* in judging contemporary community standards." (Emphasis added.) Accordingly we reject defendant's argument that "the jury was given unbridled discretion to impose any type of standard they decided \* \* \*." On retrial, however, the State should be precluded from intimating by argument or otherwise that a lesser standard is acceptable.

Following the preliminary determination by the court on November 2, 1973, that the film "Deep Throat" was obscene and ordering it held, a detective from the county sheriff's department went to the Del Van Theater later in the day of November 2, 1973, purchased a ticket and viewed 30 to 35 minutes of a paid public showing of a film entitled "Deep Throat." Upon direction of the sheriff, he thereupon arrested defendant and seized the film, both without warrant, and it was this incident which resulted in the criminal charge for which defendant was convicted here.

■■ The jury viewed the film over defendant's objection after denial of his motion to suppress and defendant claims that the court erred in denying his motion to suppress the evidence on the grounds that its seizure was constitutionally infirm. The argument is made that the legality of this subsequent seizure depends on the validity of the prior adjudication of probable cause in which defendant was unlawfully compelled to incriminate himself, in violation of fifth amendment rights, by the subpoena duces tecum. Substantially the same argument was advanced and rejected in *Houston v. Manerbino*. In that case, the court stated:

> "Houston's claim of his Fifth Amendment privilege against self-incrimination, when measured against the facts in this case is untenable. Self-incrimination under the Fifth Amendment is aimed at *preventing a person from being compelled to testify against himself*. The privilege against self-incrimination protects a person against the production of evidence of a testimonial or communicative nature. [Citation.] In measuring the right [*sic*] of self-incrimination against the right of an accused to an adversary hearing in a pornography case, it would be ludicrous to say that a person can display, promote and show moving picture films to a standing-room-only audience at performance after performance

and then claim that he has the Fifth Amendment as a shield to prevent production of the moving picture films at a hearing which the courts must conduct on the obscenity issue. * * * The Fifth Amendment cannot be used in an obscenity case where the material in issue has been openly displayed to the public to foreclose the production of the material in issue at an adversary hearing." (___ Colo. ___, ___, 521 P. 2d 166, 170.)

We decide that this precedent is valid, and that the detective, in viewing the film "Deep Throat" exhibited at defendant's theater on November 2 (after the court had already ruled as to its probable obscenity), had reasonable grounds to believe that defendant was engaged in the commission of the crime of obscenity and was authorized to arrest defendant without a warrant and to seize the material in public view as evidence.

During his case in chief, defendant made an offer of proof that on January 10 and 12, 1974, the theater exhibited the film "Deep Throat" without an admission charge, and that each person coming to see the film was given a mimeographed card "that we had made up." There was a box in the lobby where the completed questionnaires could be deposited. The offer included testimony of defendant that "some of the people" dropped cards in the box each day as they left, and that "the majority did"; that he took the cards from the box to his office; that 180 were received and that they are in the same condition as he received them without any alteration or change of number. The offer included that the questions on the card were as follows:

"(a) Did you find 'Deep Throat' offensive? yes or no

(b) Would you rate the overall quality of 'Deep Throat' excellent, good, fair or poor?

(c) Did you find the film to be entertaining and enjoyable? yes or no

(d) Would you like to view other films of this type? yes or no

(e) Did you feel consenting adults 18 years and older have a right to view films of this type? yes or no

(f) Is there any other adult film you like better than 'Deep Throat'? yes or no If yes, give title.

(g) Why did you like 'Deep Throat?'

A space was then provided on the cards for name, address, sex, age, occupation and marital status of the viewer. The court sustained the State's objection to the foregoing testimony and denied defendant's offer of proof. Defendant claims that these rulings constitute error.

■■ The statute, at section 11—20(c)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, §11—20(c)(4), provides that in any prosecution for an offense of obscenity evidence shall be admissible to show the degree, if any, of public acceptance of the material in this State. At 6

Wigmore on Evidence §1704 (1975 Supp.) it is said that "[e]vidence reflecting the result of a public poll or survey is now seemingly admitted 'despite its hearsay character.' " In *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670 (S.D. N.Y. 1963), upon which defendant relies, it was held that the hearsay rule should not bar the admission of *properly conducted public surveys.* See also 29 Am. Jur. 2d *Evidence* §502 (1967) Annot., 76 A.L.R. 2d 619, 632 (1961).) In *General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716, 734 (W.D. Mich. 1964), the court, quoting from *People v. Franklin National Bank*, 200 Misc. 557, 105 N.Y.S. 2d 81, 90-91, stated that "[a] party endeavoring to establish the public state of mind on a subject * * * should be allowed to offer evidence concerning a poll which the party maintains reveals that state of mind. The evidence involved should include calling the planners, supervisors and workers (or some of them) as witnesses so that the court may see and hear them; they should * * * give a complete exposition of the poll and even the results; the work sheets * * * and all documents used in or prepared during the poll taking and those showing its results should be offered * * *." Only the credibility of the person who took the survey is involved to show what he found and, therefore, the hearsay objection is not deemed valid.

■■ While the technical adequacy of a survey is a matter running only to the question of its weight and not its admissibility, we nonetheless conclude that the foundation proof must exhibit that the methods and circumstances used did not suggest answers favorable to the party sponsoring the survey so that its prima facie trustworthiness as some barometer of public opinion is made apparent. We agree with the conclusion of the circuit court that the foundation proof here was insufficient to warrant admission of the completed cards as a poll of public opinion. The foundation proof for a poll should disclose the exact number of persons polled, and should disclose the manner of selection. There was no evidence offered to show how many persons entered the theater on the evenings of January 10 and 12, whether any of those selected were known to have viewed the film earlier, whether they viewed it in its entirety, and whether any personal interviews were made. Without such background or testimony, the mere fact that 180 cards were returned, or that "most of the persons" given questionnaires returned them, or that the "majority" did, is not a mere technical inadequacy, but a failure to show a necessary methodology designed to assure any trustworthiness as a barometer of public opinion. We also agree with the State that question (e) is irrelevant.

■■ Finally, it is argued by defendant that he was denied a fair trial by the prejudicial closing argument of the prosecutor, Mr. Corsentino. Reference is made specifically to Mr. Corsentino's efforts to discredit Dr. Green, a psychiatrist from the University of California, who testified for

the defense in respect to the issue of whether the film had any redeeming social value and as to whether its predominant appeal was to a prurient interest in sex. Mr. Corsentino characterized Dr. Green as "a nut" and argued to the jury that "[O]f course, you can consider psychiatrists in and of themselves that they have done great service to our community. *They release murderers from institutions* * * *. He said this film had social redeeming value. I don't really know what it is. *I suppose you could say murder has social redeeming value because it curbs the population explosion.*" (Emphasis added.) He referred to one of the defense counsel as a liar, and argued (notwithstanding the court's contrary admonishment), that "there is no * * * [requirement of law] * * * that says we have to show the entire film, [that's] a perversion of law," and that it would be like "a policeman at the scene of a murder * * * [having to wait] * * * until the murder is complete * * * [and that this] * * * is the insane reasoning of the defense." "I am glad" said Mr. Corsentino, that defense counsel "was honest in one regard." He also argued, "Remember all of the hullabaloo about this sign, 'Can't show it to 18-year-olds[?].' If* * * [defendant] * * * had his way he could have shown this film to anybody." None of these remarks were warranted by anything in the record, and referring to psychiatrists as a profession responsible for releasing murderers was inflammatory and inexcusable.

It is apparent that these arguments were not inadvertent errors. As stated by the Supreme Court in *People v. Weathers*, 62 Ill. 2d 114, 120-21, 338 N.E.2d 880, 884, *rev'g* 23 Ill. App. 3d 907, 320 N.E.2d 442 (1st Dist. 1974), "They were severely prejudicial and we cannot say that they did not contribute to the defendant's conviction."

The judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

STOUDER, P. J., and STENGEL, J., concur.