THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN STROMBLAD, Defendant-Appellant.

First District (2nd Division)    No. 63009

Opinion filed December 6, 1977.

PUSATERI, J., specially concurring.
DOWNING, P. J., dissenting.

James J. Doherty, Public Defender, of Chicago (Deborah J. Gubin and David W. Hirschboeck, Assistant Public Defenders, of counsel), for appellant.

512

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant Alan Stromblad was charged by complaint with the offense of obscenity (Ill. Rev. Stat. 1973, ch. 38, par. 11—20) in that defendant, with knowledge of the nature and content thereof, or having recklessly failed to exercise a reasonable inspection which would have revealed the nature and content thereof, sold to Chicago police officer George Carey a magazine entitled "Fuck Studs" for the sum of $5. Following a jury trial in the circuit court of Cook County, defendant was found guilty and a judgment of one year's probation was entered on the verdict. Defendant appeals his conviction, raising the following issues for appellate review: (1) Whether the trial court erred in failing to grant defendant's motion to dismiss where the complaint was phrased in the disjunctive alleging two alternative and disparate acts; (2) Whether defendant's motion for directed verdict should have been granted based upon an absence of proof of the element of "knowledge"; (3) Whether the trial court erred by failing to include the phrase "utterly without redeeming social value" in the standard to be used for the determination as to whether a magazine is obscene and given to the jury as an instruction; (4) Whether the prosecutor's remarks during closing argument unduly prejudiced the jurors, denying defendant a fair trial; and (5) Whether defendant was proven guilty beyond a reasonable doubt.

George Carey, a police officer for the City of Chicago, Vice Control Division, Prostitution and Obscene Matters Section, was the sole witness on behalf of the State. Carey testified that on November 12, 1974, he went to the West Town Adult Book Store at 3429 W. North Avenue, Chicago, Illinois. Carey entered the bookstore, paid defendant Stromblad, the bookstore clerk, a $1 admission fee, and eventually took the publication "Fuck Studs" from a magazine rack and placed it on the counter facing Stromblad. Stromblad requested another $4 from Carey and Carey paid this additional amount. Stromblad then placed the magazine in a paper bag. Carey removed the magazine from the bag, identified himself as a police officer, held the magazine in front of Stromblad and asked Stromblad if he would sell a magazine of this type to a minor. Stromblad answered that he would not sell the magazine to a minor.

Officer Carey departed from the bookstore with the magazine and went to a police station. Subsequently, the magazine was presented to a judge and an arrest warrant for defendant Stromblad was issued. Carey further testified that defendant was contacted after the issuance of the

arrest warrant and defendant voluntarily surrendered himself to the police.

Defendant Stromblad was the sole witness in his own behalf. He testified that he was employed as a clerk at the West Town Book Store, 3429 W. North Avenue, Chicago, Illinois. Defendant's duties, as clerk, included sitting behind the counter, sales record-keeping and various janitorial functions. When asked to give a description of the premises, defendant described the premises in terms of the location of types of books sold, be they "hard core," "soft core" or "erotic" publications. Defendant further testified that he would occasionally get inventory for the store from a warehouse and that his prior employment was of a similar nature in an adult book store.

Defendant testified that he could not remember "Fuck Studs" as the publication sold to Officer Carey. Defendant attributed his lack of memory to the fact that there were approximately 16 books of the same nature and that they all looked the same to him. Defendant did remember looking at certain "hard core" publications from cover to cover but "Fuck Studs" had not been one of these publications. Defendant testified that he would not sell "Fuck Studs" to a minor.

Defendant argues that the trial court erred in failing to properly instruct the jury as to the proper standards to be applied in determining whether the publication was obscene. The trial court instructed the jury, *inter alia*, that:

> "Under the law three elements must exist. It must be established, A, that the dominant theme of the material, taken as a whole, appeals to the prurient interest in sex. B, the material is patently offensive because it affronts the contemporary community standards relating to the description or representation of sexual matters. C, the material, taken as a whole, lacks serious literary, artistic, political or scientific value."

Defendant contends that part C of the instruction should have stated, "the material is utterly without redeeming social value." Defendant claims that the erroneous instruction prejudiced defendant and deprived him of the due process of law.

Defendant is correct in his contention that part C of the instruction should have stated, "the material is utterly without redeeming social value." (*People v. Gould* (1975), 60 Ill. 2d 159, 324 N.E.2d 412; *People v. Thomas* (1976), 37 Ill. App. 3d 320, 346 N.E.2d 190.) In *People v. Thomas*, the jury, similarly, was erroneously instructed as to part C of the standard to be applied in determining whether a motion picture was obscene. In fact, the trial court failed to include part C as part of the instruction. Defendant was convicted despite the erroneous instruction but the

appellate court held that the failure to include part C of the standard in the instruction constituted reversible error. We believe that *Thomas* is controlling in the instant case. A jury must be instructed on the offense charged (*People v. Galvan* (1976), 42 Ill. App. 3d 390, 356 N.E.2d 139) and it is well established that it is the duty of the trial court to accurately instruct the jury as to the law to be applied in a given case. (*People v. Watson* (1975), 26 Ill. App. 3d 1081, 325 N.E.2d 629.) In the instant case it is clear that the trial court erroneously instructed the jury as to the elements of the offense of obscenity, and such error necessitates reversal by this court.

Since resolution of the jury instruction issue is dispositive of this case, it will not be necessary to address the other issues which defendant raises on appeal. Accordingly, the judgment of the circuit court of Cook County is reversed and remanded.

Reversed and remanded.

Mr. JUSTICE PUSATERI, specially concurring:

I interpret both the majority and the dissenting opinions in this case as acknowledging that the trial court was in error in failing to instruct the jury that it should consider whether the material in question "is utterly without redeeming social value." The difference in these two opinions however, is whether this acknowledged error was so prejudicial that it denied the defendant due process of law.

The dissenting opinion concludes that irrespective of which standard was used in the jury instruction, that it neither did nor could prejudice the defendant since the subject booklet was "hardcore pornography in its rawest form." While I agree that the subject booklet is hardcore pornography in its rawest form, this characterization obfuscates the issue. I do not believe that we as a reviewing court may surmise what the verdict might have been had a proper instruction been given; nor may we affirm a proceeding which undercuts the import and effect of jury deliberations and findings by ruling that an erroneous statement of law is not prejudicial.

As our supreme court in *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532, recently articulated:

"In our judge-and-jury system it is the duty of the court to inform the jury as to the law. We must assume that jurors do not fall short of their constitutional functions and follow the instructions of the trial judge. This assumption is part and parcel of our system. As Mr. Justice Holmes long ago observed: 'But it must be assumed that the constitutional tribunal does its duty. * * *' *Aikens v. Wisconsin* (1904), 195 U.S. 194, 206, 49 L. Ed. 154, 160, 25 S. Ct. 3, 6."

In this regard, the court in *Jenkins* found that giving the jury contradictory instructions on an essential element in the case was prejudicial error, since it was the court's duty, "* * * to give the jury proper guidance, not to generate confusion * * *."

This problem was also expressed in the recent case of *Smith v. United States* (1977), 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756, where the defendant was indicted under a Federal statute which prohibited the mailing of obscene materials; at the time of the mailings, the defendant's activities did not violate a State law. Mr. Justice Blackmun and the majority emphasized:

> "The fact that the jury might measure patent offensiveness against contemporary community standards does not mean, however, that juror discretion in this area is to go unchecked." (431 U.S. 291, 301, 52 L. Ed. 2d 324, 335, 97 S. Ct. 1756, 1763-64.)

The court further commented upon the importance of properly instructing a jury wherein it stated:

> "Our decision that contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community does not mean, as has been suggested, that obscenity convictions will be virtually unreviewable. We have stressed before *that juries must be instructed properly*, so that they consider the entire community and not simply their own subjective reactions, or the reactions of a sensitive or of a callous minority." (Emphasis added.) (431 U.S. 291, 305, 52 L. Ed. 2d 324, 338, 97 S. Ct. 1756, 1766.)

The court further noted that "the work also must lack serious literary, artistic, political, or scientific value before a conviction will be upheld; this determination is particularly amenable to appellate review." (431 U.S. 291, 305, 52 L. Ed. 2d 324, 338, 97 S. Ct. 1756, 1766.) It is therefore our duty to assure that the jurors are properly instructed in the law. This rule is harmonious with the notion that we may not speculate as to the juror's findings and is consistent with the idea that juror discretion in the obscenity area should not go unchecked. *Smith v. United States.*

In addition, the case at bar depicts the procedural due process problem as it was raised by the defendant in another recent Supreme Court decision, *Splawn v. California* (1977), 431 U.S. 595, 52 L. Ed. 2d 606, 97 S. Ct. 1987. In *Splawn*, the defendant was convicted of the sale of two reels of obscene film. On appeal he contended that his conviction should be reversed:

> "* * * because portions of the instructions given to the jury during his trial render his conviction violative of the First and Fourteenth Amendments. He claim[ed] that the instruction allowed the jury to convict him even though it might otherwise have found the material in question to have been protected under

the *Miller* standards." (431 U.S. 595, 597, 52 L. Ed. 2d 606, 611, 97 S. Ct. 1987, 1989.)

Specifically, the defendant challenged the portion of the instruction which permitted the jury to consider the motives of commercial exploitation on the part of persons in the chain of distribution of the material other than himself. The instruction challenged by the defendant which the Court found to be valid read as follows:

> " 'In determining the question of whether the allegedly obscene matter is utterly without redeeming social importance, you may consider the circumstances of sale and distribution, and particularly whether such circumstances indicate that the matter was being commercially exploited by the defendants for the sake of its prurient appeal. Such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance. The weight, if any, such evidence is entitled is a matter for you, the Jury, to determine.
>
> * * *
>
> Circumstances of production and dissemination are relevant to determining whether social importance claimed for material was in the circumstances pretense or reality. If you conclude that the purveyor's sole emphasis is in the sexually provocative aspect of the publication, that fact can justify the conclusion that the matter is utterly without redeeming social importance.' " (431 U.S. 595, 597, 52 L. Ed. 2d 606, 612, 97 S. Ct. 1987, 1989-90.)

The court placed great reliance on *Bouie v. Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697, which held that the elements of a statutory offense may not be so changed by judicial interpretation as to deny to accused defendants fair warning of the crime prohibited. In *Splawn,* the Court found that the instruction contained all the substantive elements of the offense including the element that the material was "utterly without redeeming social importance"; hence, the defendant was not denied due process of law. In the case at bar, the jury was not advised of a necessary element in the standards to be applied in determining whether a publication was obscene and as a result, the defendant was denied due process of law.

I thus concur that this cause should be reversed and remanded for a new trial.

Mr. PRESIDING JUSTICE DOWNING, dissenting:

I.

The opinion of the court holds that the trial court committed a fatal

error when it failed to instruct the jury that it should consider whether "the material is utterly without redeeming social value." I agree that pursuant to Illinois law existing in August 1975, the Illinois Supreme Court held this language is a necessary element in the standards to be applied in determining whether a publication was obscene. However, as applied in this case, I do not think there was any prejudicial error, nor was the defendant deprived of due process of law in the jury instructions as given.

Our supreme court has held that the giving or refusing instructions "\* \* \* will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty." *People v. Ward* (1965), 32 Ill. 2d 253, 256, 204 N.E.2d 741; *People v. Truelock* (1966), 35 Ill. 2d 189, 192, 220 N.E.2d 187.

In *Truelock*, the defendant was indicted for *knowingly* possessing a narcotic drug (Ill. Rev. Stat. 1965, ch. 38, par. 22—3). Upon a finding of guilty by a jury, the defendant urged on appeal that the court erred in giving the jury an instruction of the definition of unlawful possession which omitted the word *"knowingly."* The supreme court noted that although the statute did not contain the word "knowingly," the court had previously held that to support the conviction of the crime of unlawful possession of narcotic drugs, the State must prove *knowledge* as well as possession and control. The court then went on to say:

> "Without proof that a defendant has knowingly possessed a narcotic drug, a defendant cannot be convicted of the crime of unlawful possession of narcotic drugs, and the jury in this case should have been so instructed. However, we do not think that the error in this case requires reversal. 'Even though error may have been committed in giving or refusing instructions it will not always justify reversal when the evidence of defendant's guilt is so clear and convincing that the jury could not reasonably have found him not guilty.' (*People v. Ward*, 32 Ill. 2d 253, 256.) In the present case, the evidence of the defendant's knowledge of the presence of narcotics is clear and convincing. We do not think that a jury could reasonably have found the defendant not guilty in this case, and therefore, reversal is not justified." 35 Ill. 2d 189, 192.

In my opinion the reasoning of the supreme court in *Truelock* is clearly applicable to the instant case. In fact much more so. The term "knowingly" is clear and simple. The inclusion or omission of this judicial standard in an instruction in a narcotic possession case could, it seems to me, be significant. On the other hand in the instant case, the omission of the judicially created standard, "the material is utterly without redeeming social value," when considered with all the instructions given, and the evidence in this case did not or could not amount to prejudice. Why?

On the issue of obscenity, the trial court gave the following instructions:

"A person commits obscenity, who, with knowledge of the contents or nature thereof, or recklessly fails to exercise reasonable inspection which would have disclosed the nature or contents thereof, sells, delivers or provides, offers or agrees to sell, deliver or provide, any obscene writing, picture, record or other representation or embodiment of the obscene.

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow that such disregard constitutes a gross departure from the care which a reasonable person would exercise in this situation.

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest. That is a shameful or morbid interest in nudity, sex or excretion, or if it goes substantially beyond customary limits of candor in its description or representation of such matters.

Under the law three elements must exist. It must be established, A, that the dominant theme of the material, taken as a whole, appeals to the prurient interest in sex. B, the material is patently offensive because it affronts the contemporary community standards relating to the description or representation of sexual matters. C, *the material, taken as a whole, lacks serious literary, artistic, political or scientific value.*

The term, customary limits of candor, as used in my definition to you of what is obscene means that the material affronts the community standards. That is the standard of the average adult, not just in the City of Chicago or the County of Cook, but the average adult living in the State of Illinois.

The court has charged you that an ingredient of obscenity is the appeal of the material to the prurient interests. Prurient is a word that may mean different things to different persons.

Under the law herein a prurient interest is a shameful or morbid interest in sex, nudity or excretion as distinguished from a candid and normal interest in sex, nudity or excretion.

The court instructs the jury that you may consider the degree, if any, of public acceptance of the book in this state in judging contemporary community standards.

To sustain the charge of obscenity the state must prove the following propositions: First, that the defendant sold, delivered or provided, or offered or agreed to sell, deliver or provide an obscene writing, record or other presentation or embodiment of the obscene. Second, that the defendant knew the nature or contents of the magazine.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." (Emphasis added.)

The defendant contends that the part of the instructions italicized above should have stated "the material is utterly without redeeming social value." In reading the colloquy between the trial court and counsel, it is easy to understand how this came about. It arose as the result of changing judicial standards.

In *Miller v. California* (1973), 413 U.S. 15, 24-25, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2610, the United States Supreme Court said:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, at 230, quoting *Roth v. United States, supra*, at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the '*utterly* without redeeming social value' test of *Memoirs v. Massachusetts*, 383 U.S., at 419; that concept has never commanded the adherence of more than three Justices at one time."

Thereafter, in *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264, our supreme court discussed at great length the judicially mandated obscenity test. *Ridens* held that the "utterly without redeeming social value" test should be used rather than the (c) part of the *Miller* test. (59 Ill. 2d 362, 373.) *People v. Gould* (1975), 60 Ill. 2d 159, 164, 324 N.E.2d 412, held that part (c) of the *Miller* standard—whether "the work, taken as a whole, lacks serious literary artistic, political, or scientific value"—cannot be used. *Gould* did not involve a jury trial. In *Gould*, the court set forth judicially established guidelines to be used in examining the subject matter so as to determine whether it was obscene.

In *People v. Ward* (1976), 63 Ill. 2d 437, 349 N.E.2d 47, the supreme court reviewed a bench trial conviction of obscenity and discussed the problems involved in such a case. In upholding the conviction, the court made the following pertinent statements:

"In obscenity cases, a reviewing court must make an independent constitutional judgment on the facts of the case as to whether the

material involved is constitutionally protected. (*People v. Ridens*, 59 Ill. 2d 362.) After reviewing the publications at issue in this case, we have no hesitation in affirming the holding of the lower courts that the materials are in fact obscene. We find that the average person applying contemporary community standards would consider that, taken as a whole, the sole appeal of the two publications is to the prurient interest and that the dominant theme of the magazines is a morbid interest in nudity and sex. Moreover, we regard the publications as depicting, in a patently offensive way, sexual conduct defined by the obscenity statute, as authoritatively construed in Ridens II. In addition, the magazines go substantially beyond customary limits of candor in such depiction. We also find *that the magazines have no literary or artistic merit* and that they are utterly without redeeming social value. For the foregoing reasons we hold that the two publications are obscene, and the judgment of the appellate court is affirmed." (Emphasis added.) (63 Ill. 2d 437, 442.)

*Ward* was affirmed by the United States Supreme Court which noted that Illinois retains the stricter standard of "redeeming social value" set forth in *Memoirs. Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085.

The standard used by the trial court in the instant case comports with the judicial standard established by the United States Supreme Court in *Miller v. California*, but not with the judicial standards of the Illinois Supreme Court. It should be remembered that the instruction as given does not violate our obscenity statute. Thus the issue boils down to the question of whether the use of the *Miller* standard prejudiced the defendant. In reviewing the record, I fail to see how it could or did. The subject booklet is "hard-core" pornography in its rawest form.

The cover and back of the book involved in this case each contain color photographs of a nude man and woman engaged in the act of intercourse with close-up views of genitalia. The inside of the book contains numerous photographs, some in color and others in black and white, of a male and female in various poses of sexual intercourse, cunnilingus, and fellatio, all with close-up detail of their genitals. The cover price is $4.95. The book contains a text entitled "SEX FEAST" which reaches its climax in describing a sex-orgy involving two males and two females.

In applying the mandate to reviewing courts set forth in *Ward* by the Illinois Supreme Court, as quoted above, there can be no question that the book is obscene. Its sole appeal is to the prurient interest, and its dominant theme is a morbid interest in nudity and sex. There can be no question that the book depicts, in a patently offensive way, sexual conduct defined by the obscenity statute and goes substantially beyond customary

limits of candor in such depiction. It has no literary or artistic merit and is utterly without redeeming social value. Regardless of which standard was used in the jury instruction, in my opinion, the jury verdict would have been the same. There is no question but that the instructions correctly quoted the statute on obscenity and the relevant issues. The problem arose as the result of the judicial guidelines which we have attempted to illustrate have not only been changing but are obviously confusing.

The majority believes *People v. Thomas* (3d Dist. 1976), 37 Ill. App. 3d 320, 346 N.E.2d 190, is "controlling." I disagree. We are bound to give the opinion of our colleagues thoughtful respectful consideration, but we are not bound by their holding. See *Corbett v. Devon Bank* (1st Dist. 1973), 12 Ill. App. 3d 559, 567, 299 N.E.2d 521.

I am also unpersuaded by the reasoning of the specially concurring opinion and the two cases relied upon therein. Neither *Smith v. United States* (1977), 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756, nor *Splawn v. California* (1977), 431 U.S. 595, 52 L. Ed. 2d 606, 97 S. Ct. 1987, involves a factual situation similar to the case at bar, and neither case deals with the issue which this court faces.

In *Smith*, the defendant was convicted in a Federal district court for mailing obscene materials in violation of 18 U.S.C. §1461, which prohibits the mailing of obscene materials. The mailings took place in Iowa where the State law only forbade the dissemination of obscene matter to minors. The obscenity statute of the State of Iowa was introduced into evidence, and the jurors were told that they could consider it as evidence of the community standard. The issues presented to the reviewing courts did not involve the instruction issue before this court. Nowhere in the Supreme Court's opinion is any issue decided which aids this court in resolving the instruction issue before us. In Justice Blackmun's opinion there is considerable language—dicta—that can be culled out and used for whatever purpose a writer desires. Yet even a superficial examination of the *Smith* language cited by the concurring opinion reveals that it was offered in the context of a discussion of part of the *Miller* test, a point not in dispute in the instant case. As I read it, *Smith* does not address itself to or aid in the resolution of our issue.

In *Splawn*, the defendant was convicted in California for selling obscene film in violation of California law. On appeal he claimed that portions of the instructions to the jury violated his first and fourteenth amendment rights. Splawn asserted that the instructions (1) allowed the jury to convict him even though it might otherwise have found that the film was protected under the *Miller* standards because the instructions permitted the jury to consider motives of commercial exploitation on the part of persons in the chain of distribution other than the defendant, and (2) violated the prohibition against *ex post facto* laws and the fair-

warning requirement of *Bouie v. Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697. The challenged instruction permitted the jury, in determining whether the film was utterly without redeeming social importance, to consider whether such circumstances indicated that the film was being commercially exploited for the sake of its prurient appeal. In the case which confronts this court, the circumstances of the sale are not in dispute.

The Supreme Court noted in *Splawn* that in reviewing jury instructions, it has broader power in prosecutions under Federal statutes than its power to upset State convictions by reasons of instruction given during the course of a trial. It can exercise the latter authority only if the instruction renders the subsequent conviction violative of the United States Constitution. The Supreme Court affirmed Splawn's conviction, finding the given instructions violated no constitutional rights of the defendant or the prohibition against *ex post facto* laws or *Bouie v. Columbia.* It should be emphasized that *Bouie* held that the elements of a statutory offense may not be so changed by judicial interpretation as to deny to accused defendants fair warning of the crime prohibited. In the case at bar there is no claim that the questioned instruction violated any statutory provision. Thus, I find no basis either in *Splawn* or *Bouie* which mandates the reversal of the instant case.

Based on the record in this case, therefore, I cannot elevate the error in this case to the position of reversible prejudice. Nor do I find it violates defendant's due process rights any more than the errors raised in *Ward* and *Truelock.*

II.

The defendant's other points involving the sufficiency of the complaint, proof of knowledge, remarks of the prosecutor during closing argument, and whether the defendant was proved guilty beyond a reasonable doubt, in my opinion, do not merit reversal.

Therefore, I would affirm the judgment of the circuit court of Cook County.