# SPLAWN *v.* CALIFORNIA

No. 76–143.  Argued March 23, 1977—Decided June 6, 1977

*Arthur Wells, Jr.,* argued the cause and filed a brief for petitioner.

*William D. Stein,* Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *Edward P. O'Brien,* Assistant Attorney General, and *Alvin J. Knudson,* Deputy Attorney General.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner Splawn was convicted in 1971 of the sale of two reels of obscene film, a misdemeanor violation of California Penal Code § 311.2 (West 1970). After the conviction was affirmed on appeal by the California First District Court of Appeal and the State Supreme Court denied review, this Court granted certiorari, vacated the judgment, and remanded for consideration in light of our decision in *Miller* v. *California,* 413 U. S. 15 (1973), which had set forth the standards by

---

*\*Charles H. Keating, Jr.,* and *James J. Clancy* filed a brief for Citizens for Decency Through Law, Inc., as *amicus curiae* urging affirmance.

which the constitutionality of § 311.2 was to be determined. After the State Supreme Court ruled that the statute satisfied the requirements articulated in *Miller,* see *Bloom* v. *Municipal Court,* 16 Cal. 3d 71, 545 P. 2d 229 (1976), the Court of Appeal again affirmed the conviction and the California Supreme Court denied petitioner's motion for a hearing.

We again granted certiorari, 429 U. S. 997 (1976), to consider petitioner's assorted contentions that his conviction must be reversed because portions of the instructions given to the jury during his trial render his conviction violative of the First and Fourteenth Amendments. He claims that the instruction allowed the jury to convict him even though it might otherwise have found the material in question to have been protected under the *Miller* standards. He also contends that the same portions of the instructions render his conviction invalid by reason of the constitutional prohibition against *ex post facto* laws and the requirement of fair warning in the construction of a criminal statute enunciated in *Bouie* v. *City of Columbia,* 378 U. S. 347 (1964). We consider these contentions in light of the fact that petitioner has abandoned any claim that the material for the selling of which he was convicted could not be found to be obscene consistently with the First and Fourteenth Amendments, and any claim that the California statute under which he was convicted does not satisfy the requirements articulated in *Miller, supra.*

As it was understood by the California Court of Appeal, petitioner's challenge is leveled against the following portion of the instructions:

> "In determining the question of whether the allegedly obscene matter is utterly without redeeming social importance, you may consider the circumstances of sale and distribution, and particularly whether such circumstances indicate that the matter was being commercially exploited by the defendants for the sake of its prurient appeal. Such evidence is probative with respect to the nature of

the matter and can justify the conclusion that the matter is utterly without redeeming social importance. The weight, if any, such evidence is entitled [to] is a matter for you, the Jury, to determine.

.            .            .            .            .

"Circumstances of production and dissemination are relevant to determining whether social importance claimed for material was in the circumstances pretense or reality. If you conclude that the purveyor's sole emphasis is in the sexually provocative aspect of the publication, that fact can justify the conclusion that the matter is utterly without redeeming social importance." App. 38–39.

There is no doubt that as a matter of First Amendment obscenity law, evidence of pandering to prurient interests in the creation, promotion, or dissemination of material is relevant in determining whether the material is obscene. *Hamling* v. *United States,* 418 U. S. 87, 130 (1974); *Ginzburg* v. *United States,* 383 U. S. 463, 470 (1966). This is so partly because, as the Court has pointed out before, the fact that the accused made such an appeal has a bearing on the ultimate constitutional tests for obscenity:

"The deliberate representation of petitioners' publications as erotically arousing, for example, stimulated the reader to accept them as prurient; he looks for titillation, not for saving intellectual content. Similarly, such representation would tend to force public confrontation with the potentially offensive aspects of the work; the brazenness of such an appeal heightens the offensiveness of the publications to those who are offended by such material. And the circumstances of presentation and dissemination of material are equally relevant to determining whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality—whether

it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes." *Ibid.*

Petitioner's interpretation of the challenged portions of the instructions in his case is that they permitted the jury to consider motives of commercial exploitation on the part of persons in the chain of distribution of the material other than himself. We upheld a similar instruction in *Hamling, supra,* however, wherein the jury was told that it could consider "whether the materials had been pandered, by looking to their '[m]anner of distribution, circumstances of production, sale, . . . advertising . . . [, and] editorial intent . . . .' This instruction was given with respect to both the Illustrated Report and the brochure which advertised it, both of which were at issue in the trial." 418 U. S., at 130.

Both *Hamling* and *Ginzburg* were prosecutions under federal obscenity statutes in federal courts, where our authority to review jury instructions is a good deal broader than is our power to upset state-court convictions by reason of instructions given during the course of a trial. See *Cupp* v. *Naughten,* 414 U. S. 141 (1973); *Henderson* v. *Kibbe, ante,* p. 145. We can exercise the latter authority only if the instruction renders the subsequent conviction violative of the United States Constitution. Questions of what categories of evidence may be admissible and probative are otherwise for the courts of the States to decide. We think *Hamling, supra,* and *Ginzburg, supra,* rather clearly show that the instruction in question abridges no rights of petitioner under the First Amendment as made applicable to the States by the Fourteenth Amendment.

But petitioner contends that even though this be so, the particular portions of the instructions of which he complains were given pursuant to a statute enacted *after* the conduct for which he was prosecuted. In his view, therefore, his conviction both violates the constitutional prohibition against *ex post facto* laws, see *Calder* v. *Bull,* 3 Dall. 386, 390 (1798),

and failed to give him constitutionally fair warning of the prohibited conduct with which he was charged. *Bouie* v. *Columbia, supra.* We find these contentions to be without merit, and we reject them.

The section of the California Penal Code defining the substantive misdemeanor with which petitioner was convicted, § 311.2, was in full force and effect at all times relevant to petitioner's conduct. California Penal Code § 311 (a) (West 1970), which authorized the above-quoted instructions, was enacted after part of the conduct for which he was convicted but prior to his trial. That section, however, does not create any new substantive offense, but merely declares what type of evidence may be received and considered in deciding whether the matter in question was "utterly without redeeming social importance."

Petitioner's *ex post facto* argument is based on his reading of an earlier decision of the Supreme Court of California, *People* v. *Noroff,* 67 Cal. 2d 791, 433 P. 2d 479 (1967). His view is that under that case evidence such as was admitted here would not have been admissible at his trial on the substantive offense but for the enactment of § 311 (a)(2). He claims that such a change in procedural rules governing his trial amounts to the enactment of an *ex post facto* law in violation of Art. I, § 9, cl. 3. The California Court of Appeal's opinion in this case rejected that contention, and since it is a contention which must in the last analysis turn on a proper reading of the California decisions, such a determination by the California Court of Appeal is entitled to great weight in evaluating petitioner's constitutional contentions.

The Court of Appeal, commenting on *Noroff,* said with respect to the California Supreme Court's decision in that case:

> "The court did not, however, disapprove of any use of evidence of pandering for its probative value on the issue of whether the material was obscene. It merely rejected

the concept of pandering of nonobscene material as a separate crime under the existing laws of California." App. to Pet. for Cert. ix.

We accept this conclusion of the California Court of Appeal, and therefore find it unnecessary to determine whether if § 311 (a)(2) had permitted the introduction of evidence which would have been previously excluded under California law, petitioner would have had a tenable claim under the *Ex Post Facto* Clause of the United States Constitution.

*Bouie* v. *City of Columbia, supra,* holds that the elements of a statutory offense may not be so changed by judicial interpretation as to deny to accused defendants fair warning of the crime prohibited. No such change in the interpretation of the elements of the substantive offense prohibited by California law took place here, and petitioner may therefore derive no benefit from *Bouie.*

We thus find no merit in petitioner's claims based on First and Fourteenth Amendment protection of nonobscene matter, the constitutional prohibition against *ex post facto* laws, or *Bouie* v. *City of Columbia.* We have considered petitioner's other claims, which appear to be variations on the same theme, and likewise reject them. The judgment of the California Court of Appeal is

*Affirmed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join, dissenting.

The California courts, in response to our remand for reconsideration in light of *Miller* v. *California,* 413 U. S. 15 (1973), reaffirmed petitioner's 1971 conviction of selling obscene films in violation of California Penal Code § 311.2 (West 1970). I would reverse the conviction. I adhere to my view expressed in *Miller* that this statute is "unconstitutionally overbroad, and therefore invalid on its face." 413 U. S., at 47 (BRENNAN, J., dissenting). See also *Pendleton* v. *California,* 423 U. S.

1068 (1976) (BRENNAN, J., dissenting from dismissal of appeal); *Sandquist* v. *California,* 423 U. S. 900, 901 (1975) (BRENNAN, J., dissenting from denial of certiorari); *Tobalina* v. *California,* 419 U. S. 926 (1974) (BRENNAN, J., dissenting from denial of certiorari); *Kaplan* v. *California,* 419 U. S. 915 (1974) (BRENNAN, J., dissenting from denial of certiorari); *Blank* v. *California,* 419 U. S. 913 (1974) (BRENNAN, J., dissenting from denial of certiorari).

MR. JUSTICE STEWART, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

In my view the statute under which the petitioner was convicted is constitutionally invalid on its face.   Accordingly, I have joined MR. JUSTICE BRENNAN's dissent.

But even if, as the Court believes, the statute itself is not invalid, MR. JUSTICE STEVENS has surely demonstrated that this petitioner was unconstitutionally convicted under it.   On that basis, I also join the dissenting opinion of MR. JUSTICE STEVENS.

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting.

Under the trial court's instructions, the jury may have determined that the films sold by the petitioner had some social significance and therefore were not in themselves obscene, but nevertheless found him guilty because they were advertised and sold as "sexually provocative." [1]   A conviction pursuant to such an instruction should not be allowed to stand.

Truthful statements which are neither misleading nor offensive are protected by the First Amendment even though

---

[1] The relevant instruction is quoted by the Court, *ante,* at 597–598.   I would emphasize this sentence: "If you conclude that the purveyor's sole emphasis is in the sexually provocative aspect of the publication, that fact can justify the conclusion that the matter is utterly without redeeming social importance."

made for a commercial purpose. *Virginia Pharmacy Bd.* v. *Virginia Consumer Council,* 425 U. S. 748. Nothing said on petitioner's behalf in connection with the marketing of these films was false, misleading, or even arguably offensive either to the person who bought them or to an average member of the community. The statements did make it clear that the films were "sexually provocative," but that is hardly a confession that they were obscene. And, if they were not otherwise obscene, I cannot understand how these films lost their protected status by being truthfully described.[2]

Even if the social importance of the films themselves is dubious, there is a definite social interest in permitting them to be accurately described. Only an accurate description can enable a potential viewer to decide whether or not he wants

---

[2] *Ginzburg* v. *United States,* 383 U. S. 463, does not foreclose this analysis because it was decided before the Court extended First Amendment coverage to commercial speech. *Ginzburg* cannot survive *Virginia Pharmacy.* *Ginzburg* is based on the premise that advertising the character of the material may "catch the salaciously disposed," 383 U. S., at 472, and "stimulat[e] the reader to accept them as prurient," *id.,* at 470. But MR. JUSTICE BLACKMUN's opinion for the Court in *Virginia Pharmacy* makes it clear:

"There is . . . an alternative to this highly paternalistic approach. That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them. . . . It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us." 425 U. S., at 770. See also *Linmark Associates, Inc.* v. *Willingboro, ante,* p. 85. Indeed, the case for First Amendment protection in advertising is stronger in this case than in *Linmark* or *Virginia Pharmacy.* For to ban advertising of a book or film is to suppress the book or film itself.

MR. JUSTICE BRENNAN does not join this footnote. Because he agrees that the California Legislature's retroactive adoption of *Ginzburg* violates the *Ex Post Facto* Clause, n. 4, infra, we need not in his view decide the question whether *Ginzburg* survives *Virginia Pharmacy.*

to see them. Signs which identify the "adult" character of a motion picture theater or of a bookstore convey the message that sexually provocative entertainment is to be found within; under the jury instructions which the Court today finds acceptable, these signs may deprive otherwise nonobscene matter of its constitutional protection. Such signs, however, also provide a warning to those who find erotic materials offensive that they should shop elsewhere for other kinds of books, magazines, or entertainment. Under any sensible regulatory scheme, truthful description of subject matter that is pleasing to some and offensive to others ought to be encouraged, not punished.[3]

I would not send Mr. Splawn to jail for telling the truth about his shabby business.[4]

---

[3] It is ironic that in upholding obscenity laws this Court has stressed the State's "legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles." *Miller* v. *California,* 413 U. S. 15, 18–19 (footnote omitted).

[4] I must also record my dissent from the Court's disposition of petitioner's *ex post facto* argument.

In *People* v. *Noroff,* 58 Cal. Rptr. 172 (1967), the California Court of Appeal reversed a trial judge who had determined the obscenity issue before trial solely on the basis of the materials themselves. Relying on *Ginzburg,* the Court of Appeal held that the prosecution should have been allowed to present evidence of pandering; "although the ultimate constitutional fact in issue remains a question of law to be decided by the court, it will be a rare case . . . when a trial court may properly undertake to determine this issue prior to trial by a mere examination of the material itself unaided by expert testimony or evidence relating to the conduct of defendant in connection with the material." 58 Cal. Rptr., at 177.

The California Supreme Court reversed, and rejected the argument "that the trial court should have permitted the prosecution to go to the jury with evidence bearing upon the defendant's 'pandering' of the magazine in question." 67 Cal. 2d 791, 793, 433 P. 2d 479, 480 (1967). The court also expressly rejected an argument that an earlier California case had

adopted "a 'pandering' concept similar to that elaborated in *Ginzburg* in the context of the federal obscenity statute." *Id.*, at 793 n. 4, 433 P. 2d, at 480 n. 4.

After petitioner's offense, the California Legislature retroactively adopted *Ginzburg* by statute. In my view, petitioner had the right to rely on the *Noroff* decision, and to believe that he was entitled to truthfully advertise otherwise nonobscene material. The *Ex Post Facto* Clause "reflect[s] the strong belief of the Framers of the Constitution that men should not have to act at their peril, fearing always that the State might change its mind and alter the legal consequences of their past acts so as to take away their lives, their liberty or their property." *El Paso* v. *Simmons*, 379 U. S. 497, 522 (Black, J., dissenting).