**Alan H. SEDELBAUER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1181S335.**

Supreme Court of Indiana.

Nov. 30, 1981.

this case, set aside the opinion of the Court of Appeals, and sustain the decision of the trial court.

In reversing the trial court, the Court of Appeals held that (1) Instruction No. 12, given by the trial court, which authorized the jury to consider whether the matter or performance had been pandered, was incomplete in that the jury should have been told of the United States Supreme Court's definition of the word "pandered"; and (2) the evidence in the record did not support the giving of the instruction.

Insofar as the first reason given, the Court of Appeals correctly quotes the Supreme Court of the United States in its definition of the word "pandering" to be, "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of the customers." *Pinkus v. United States*, (1978) 436 U.S. 293, 303, 98 S.Ct. 1808, 1815, 56 L.Ed.2d 293, 302. However, then, without quoting or reciting any of the evidence from the record, the opinion draws the conclusion that there was no evidence produced by the State to warrant giving an instruction concerning a pandering of pornographic literature. When one examines the record in this case, it is found such conclusion is wholly erroneous. The record, in fact, is replete with information of the open advertising of an adult bookstore, a clear indication of the content thereof, and explicit graphic displays inside the store, all of which could be nothing but "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of the customers." The building was described as having two large glass windows in the front which were painted over with some sort of a picture, with the words "Adult News and Book Store", and "Films, Peep Shows." Another sign on the outside of the building said, "Swingers World." Inside the building, there were several cases and bookshelves containing such paraphernalia as dildoes, whips, chains, and magazines, the covers of which described various types of sexual activities. We hold the evidence presented by the State in this case was more than ade-

K. Richard Payne, Fort Wayne, for appellant; Robert Eugene Smith, Atlanta, Ga., on brief.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

## TRANSFER FROM COURT OF APPEALS

GIVAN, Chief Justice.

Appellant was convicted in the Superior Court, Allen County, on two counts of distributing obscene matter for consideration.

The Court of Appeals reversed his conviction. 402 N.E.2d 1006. Opinion on Rehearing, 405 N.E.2d 566. We grant transfer in

quate to justify the use of the word "pandered" in the court's Instruction No. 12. There was ample evidence in the record from which the jury could conclude the appellant was "in the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of the customers."

In as much as this Court is affirming the trial court, it becomes necessary to address the questions raised in the brief of the appellant which were not covered by the opinion in the Court of Appeals. Appellant requests this Court to independently review the alleged obscenity of the magazine "Desire" and of the film "Sweet Dixie" constituting the basis of appellant's conviction. In support of this request, they cite *Manual Enterprises, Inc. v. Day*, (1962) 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639. This we will do, although in doing so we will sustain the decision of the trial court.

In urging this Court to exercise independent review, the appellant observes that the Supreme Court of the United States has reversed convictions concerning the publication and sale of materials devoted entirely to "explicit depictions or descriptions of sexual activities, including detailed and vernacular descriptions reaching the ultimate in explicitness as to heterosexual intercourse, masturbation, bestiality, oral-genital intercourse, sadomasochism, and homosexual activity." They also note that the Supreme Court of the United States has "reversed findings of obscenity as to films which depict totally nude women, films which depict nude and partially nude men and women engaged in sexual gyrations, simulated intercourse, and simulated oral-genital contact, all emphasizing pubic and rectal areas; and films depicting lesbian activity and heterosexual activity between men and women."

There can be little question that the above described matters could not, in and of themselves, be classified as obscene. Certainly, within the definition of art, the human race has for generations depicted the naked human body in various postures calculated to be pleasing to the viewer and to

possess cultural value. In the field of medicine, including publications calculated to instruct persons as to their bodily functions, it is fitting and proper to show both male and female genitals to describe the functions thereof, and to explicitly depict the function of sexual arousal and intercourse itself. We see no difference whether this is accomplished by illustrated printed matter or by film, either movie or slide. Certainly, it is the desire of most every parent to educate his child concerning his bodily functions and in the due course of time, according to the age of understanding of the child, to instruct that child concerning explicit sexual activities. It is the hope of nearly every parent that his child will grow to adulthood with a healthy libido which will enable it to enjoy sex to the fullest, to respect the dignity of his sex partner, and to be blessed with the ability to produce offspring which are both mentally and physically normal.

The First Amendment guarantees each citizen the freedom of speech and publication to accomplish these ends. This freedom, however, does not give license for the utterance or publication of any and every conceivable variation of the subject matter, if that utterance or publication impinges upon the freedom of others to enjoy life in an acceptable manner according to the standards of the community.

It is not the subject matter that is obscene in any situation, it is the manner in which the subject matter is presented that constitutes obscenity. For instance, a nude model may be presented to an art class to aid in the instruction of the students as to how to depict the nude human form. The model may be presented in a wholly acceptable manner and not be considered as lewd or obscene. However, one could take that same model and by a slight change in pose and setting transform that same person into a lewd and obscene object. The difference would be readily discernible to any member of society.

In reading the appellant's brief in its entirety, one is led to the conclusion that it is his object to have this Court make a statement that, in fact, there is no such

thing as obscenity. However, we must turn to the statutes which have been passed by men and women who are in touch with the realities and standards of the communities from which they come, and to cases such as the case at bar that have been submitted to juries of men and women who are familiar with the standards of their community. It cannot be presumed that each and every one of these persons has a jaded and perverse concept of sex or the functions of the human body and that they are, in fact, in error when they perceive there is conduct which they should seek to prevent because of its objectionable nature. Again, we must presume it is not the subject itself which these people perceive to be obscene, but the manner in which the subject is presented that makes the activity obscene.

It is often heard in judicial circles, "I can't describe obscenity but I know it when I see it." However, such an observation is not adequate for our purposes here. What is it the legislator has in mind when he passes an obscenity statute? What is it the juror has in mind when he votes for a conviction of a defendant on a charge of obscenity? We must presume that these are normal people functioning in our society; enjoying the pleasures of their sexuality; reproducing, raising children whom they, in turn, hope will enjoy their own sexuality. Therefore, it cannot be the subject of the human body or of sexuality that they are perceiving to be obscene. One must presume the statutes are passed and the verdicts are rendered because of a perception of presentation of a subject which is offensive. The question then is, why is a certain presentation offensive? In the field of human bodily function, and more particularly in the function of the sexuality of the human being, most people perceive sexuality as extremely personal and private. They view their relationship with their mate as being a very pleasureful, intimate, and rewarding experience. They realize the frailties of the human body and the reproductive organs, and the tragedy that results from abuse of those parts. They recognize the physical and mental well-being of the present generation. The pleasureful urge to mate leads to reproduction, which in turn leads to an urgency to produce children who in their turn will develop into adults who can enjoy their sexuality in a healthy manner calculated to maintain the respect of their sexual mate. So long as the presentation of sexuality remains within the accepted forms of our literature and medical journals, these people do not perceive the same to be obscene but, in fact, a pleasureful, desired, and necessary part of the overall picture of a civilized society. However, when presentation takes the form of a gaudy, flippant, frivolous, or distorted attitude the observer is then offended. A thing which he holds dear and a relationship which he cherishes with another person is made to appear cheap and lustful. The process of reproduction with which he has been entrusted becomes a thing to be taken lightly and abused to the potential detriment of the individual and to the next generation. A person who is quite willing to enter into a discussion of the sexuality of a human being with his children, or who is quite willing to give them medical journals, some explicit in pictorial presentation, suddenly finds himself with a type of presentation that would be wholly unacceptable to such use. This is an emotion which should be readily recognized by almost anyone.

■ We now examine the material placed in evidence by the State in the prosecution in the case at bar. We must determine whether or not this literature fits the definition set forth in a statute passed by our Legislature, and whether or not the jurors observing this material correctly catagorized it as being obscene within the meaning of the statute.

The magazine which was marked as State's Exhibit 1 is of gaudy color and design, in large letters one and three-quarter inches in height is the word "Desire." Above that word, in letters one-quarter inch in height are the words "A Magazine for Adults Only," the price on the face of the magazine is quoted at $10.00, the cover picture on the magazine shows a couple engaged in oral-genital sexual contact. The magazine is largely a pictorial in both

black and white and color. The pictures show a man and a woman in various stages of undress in all manner of sexual contact: anal, oral, and genital. The sparse written material interspersed with the pictures purports to be quotations from such learned lexicons as Webster's dictionary defining such words as "stimulus" presumably added to give some redeeming feature to the publication. However, in reading the written material one finds the exact words repeated on a succeeding page as were read on the prior page. This leads to the conclusion the material was picked at random, not very carefully edited, and merely added for some reason other than its literary content. The back of the magazine is in full color and depicts a nude couple with the woman in posterior position in sexual connection. Although many of the pictures in the magazine might be placed in a medical book for demonstrative purposes and in such surrounding would be perfectly acceptable, when one views the overall package of this magazine, it becomes abundantly apparent it was produced and sold for the purpose of "commercial exploitation of erotica solely for the sake of prurient appeal." *Ginzburg v. United States*, (1966) 383 U.S. 463, 466, 86 S.Ct. 942, 945, 16 L.Ed.2d 31, 35.

The eight millimeter film involved in this case is a reel containing approximately 45.7 meters, is packaged in a cardboard box, gaudily colored, with the words "Sweet Dixie" on the top of one side. Under the words is a picture of two women and one man engaged in oral-genital contact and in a position implying masturbation. Beneath the picture, we find the words "Savannah Pudding"; below that, the words "Starring Savannah Swingers." On the back side of the package, we find six pictures, one of which is a smaller edition of the cover picture, the others show similar poses of various persons in oral-genital contact, and in one picture a group of five persons engaged in various types of sexual contact. On the back side are also the words "Savannah Pudding", "Birmingham Blow Out", "Johanna", and "Southern Style." On the edges of the box, we find the words "Vivid Color." The film in its entirety depicts several adult male and female human beings, engaged in various types of oral, anal, and genital contact with each other. There is nothing about the film or the cover in which it is contained that purports to be scientific or educational. It is hardly the type of thing one would give to one's offspring to prepare them for their life as a sexual adult. Again, it is abundantly apparent that this film was produced for "commercial exploitation of erotica solely for the sake of prurient appeal." *Ginzburg, supra.*

Appellant raises the following issues which were not covered by the opinion of the Court of Appeals.

"Are the materials charged against appellant obscene as a matter of law or do they constitute protected expression under the *First* and *Fourteenth Amendments* to the *United States Constitution*?" In view of the foregoing, and under the authority of *Ginzburg, supra*, we hold that the materials charged against the appellant are, in fact, obscene, that they are not protected either under the First Amendment or the Fourteenth Amendment and, in fact, the general population of the community is entitled to the protection of the Constitution in having them excluded from public display and sale. We cannot believe the framers of the Constitution ever intended the First Amendment to be used to turn society over to the basest element in our population.

Appellant next asks the question, "Is evidence constitutionally sufficient to support a finding of *scienter*, where the defendant did not know the nature and character of the contents of the material sold?" This question by the appellant borders on the ludicrous. Any adult human being who could pick up the packages, above described, and sell them to a customer in a store, as above described, would indeed be out of touch with reality if he did not know and understand the nature of the object he was selling.

■ Appellant next asks the question, "Did the trial court err in substituting for defendant's jury instructions of 'tolerance'

in determining community standards, the much narrower standard of 'acceptance'?" This question raises a specious argument which appellant attempts to support by citing the case of *Miller v. California*, (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. He proceeds then in his brief to quote Chief Justice Burger writing in the *Miller* case as saying:

> "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found *tolerable* in Las Vegas, or New York City." *Id.* at 32, 93 S.Ct. at 2619, 15 L.Ed.2d at 435.

According to appellant, the use of the word "tolerable" in that context in the opinion is support for the theory that the standard of conduct must not merely be acceptable in the community. We see no basis for such an interpretation of Chief Justice Burger's language. In fact, it should be noted that the word "accept" is used in the line immediately above the word "tolerable." For additional authority, appellant cites *Pinkus v. United States*, (1978) 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293. He cites the following quotation from the *Pinkus* case:

> " '[T]he Court has held . . . local rather than national standards should be applied. *Hamling v. U.S., supra.* Similarly, obscenity is to be judged according to the *average person* in the community, *rather than the most prudish or the most tolerant.*' " (Emphasis added.) *Id.* at 299, 98 S.Ct. at 1813, 56 L.Ed.2d at 300, *quoting* from *Smith v. U.S.,* (1977) 431 U.S. 291, 304, 97 S.Ct. 1756, 1765, 52 L.Ed.2d 324, 337.

He cites this language for the proposition that the material should be tolerated by the community rather than accepted by the community. Webster's Third New International Dictionary defines the word "accept", *inter alia,* "To take without protest: endure or tolerate." It defines the word "tolerate", *inter alia,* "To endure, to put up with." Appellant has attempted to construct an argument here based upon what we perceive to be unrelated language lifted from

context from opinions of the Supreme Court of the United States and has attempted to convince this Court that the trial court should be reversed because of the choice between words, which according to the dictionary are virtually interchangeable. We hold the trial court did not err in using the word "accept" in giving instructions to the jury rather than the word "tolerate" as requested by the defendant.

The State's Petition to Transfer is granted; the decisions of the Court of Appeals are vacated, and the trial court is in all things affirmed.

PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., concurs in result only.

DeBRULER, J., dissents with separate opinion.

ON PETITION TO TRANSFER

DeBRULER, Justice, dissenting.

I agree with the Court of Appeals that there was no evidence to warrant giving the instruction on pandering. "Pandering" in the context of a prosecution for distributing obscene materials is a term of art of constitutional dimension. As Justice Givan points out, "pandering" is "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of . . . customers." *Pinkus v. United States,* (1978) 436 U.S. 293, 303, 98 S.Ct. 1808, 1815, 56 L.Ed.2d 293, 302, citing *Ginzburg v. United States,* (1966) 383 U.S. 463, 467, 86 S.Ct. 942, 945, 16 L.Ed. 31, 35, in turn citing *Roth v. United States,* (1957) 354 U.S. 476, 495–496, 77 S.Ct. 1304, 1314–1315, 1 L.Ed.2d 1498 (Warren, J., concurring). The evidence relied upon by the State consisted of signs on the building ("Adult News and Bookstore", "Swingers World Bookstore", and "Films and Peep Shows"), and inside the store on a magazine rack ("Asses, Tits, and Other Things"). None of these signs constitutes "textual or graphic material openly advertised to appeal to the erotic interest of . . . customers," in the sense intended in *Roth, supra* (mailing obscene circulars and advertising, and an obscene

**212**

book); *Ginzburg, supra* (mailing obscene publications and advertising telling how and where the publications might be obtained; and *Pinkus, supra* (mailing brochures illustrating sex books, magazines, and films).

A state has a "legitimate interest in prohibiting disseminating or exhibition of obscene material *when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or exposure to juveniles.*" (Emphasis added.) *Miller v. California*, (1973) 413 U.S. 15, 18–19, 93 S.Ct. 2607, 2612, 37 L.Ed.2d 419. The mere advertising of the name "Swingers World Bookstore" and a plain description of the nature of the materials sold there as "adult" is not evidence of the kind of obtrusive advertising contemplated by the United States Supreme Court as a factor to be considered "to aid a jury in its determination of whether materials are obscene...." *Splawn v. California*, (1977) 431 U.S. 595, 598, 97 S.Ct. 1987, 1990, 52 L.Ed.2d 606. There is no evidence of the kind of representation of the materials as "would tend to *force public confrontation* with the potentially offensive aspects of the work...." (Emphasis added.) *Ginzburg v. United States*, 383 U.S., at 470, 86 S.Ct., at 947. On this basis, the conviction should be reversed.

I also dissent from the majority's independent determination of obscenity as it is not based upon application of the constitutional test for obscenity set out in *Miller v. California, supra,* and embodied in the obscenity statute under which Sedelbauer was charged.