**Mark A. PETERS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–982A262.**

Court of Appeals of Indiana, Third District.

May 26, 1983.

Lebamoff & Associates, Fort Wayne, Burton Sandler Pro Hac Vice, Towson, for appellant.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Following a jury trial, Mark A. Peters (Peters) was convicted of distributing obscene material,[1] a class A misdemeanor. Peters appeals, raising the following issues:[2]

(1) Whether the material which Peters sold to a police officer is obscene;

(2) Whether the evidence that Peters acted "knowingly or intentionally" is sufficient to support his conviction;

(3) Whether the State offered sufficient evidence to rebut the testimony of Peters's expert witness; and

(4) Whether the trial court erroneously refused to give certain instructions tendered by Peters.

Affirmed.

On June 23, 1981, Officer Shannon (Shannon), a vice and narcotics officer with the Fort Wayne Police Department, visited the Erotica House in Fort Wayne, Indiana. Shannon selected a magazine and a film from those displayed for sale in the store and took them to the cash register. Peters rang up the sale on the cash register and put the materials in a paper sack, which he gave to Officer Shannon. After making the purchase, Shannon left the store.

I.

Obscenity

Peters contends that the material he sold to Shannon is not "hard core" pornography and, therefore, not obscene. We do not agree. The magazine Shannon purchased was sealed in clear plastic. At the

---

1. IC 1976, 35–30–10.1–2(2) (Burns Code Ed., 1979 Repl.).

2. The issues have been restated and renumbered.

top of the front cover is the title "Slumber Party;" below the title are the phrases "Three-way sex party", "All color" and "Adults only!" Both the front and back cover pictures show two women and one man, all nude, engaged in oral-genital contact. The pictures inside the magazine show the same three persons engaged in varied sexual activities. A brief story accompanies the pictures. This magazine is similar to the magazine held to be obscene by the Indiana Supreme Court in *Sedelbauer v. State* (1981), Ind., 428 N.E.2d 206, 209–10, *cert. denied,* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 therefore, Peters's contention must fail.

## II.

### Sufficiency

■ When reviewing the sufficiency of the evidence, this Court will neither weigh the evidence nor judge the credibility of witnesses. We will consider the evidence most favorable to the State and all the reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value on each element of the crime, we will not disturb the judgment. *Smith v. State* (1982), Ind., 429 N.E.2d 956, 957.

■ Peters contends that the State failed to present sufficient evidence of scienter to support the verdict. Before a person can be convicted of distributing obscene material, he must have knowledge of the nature and contents of the material. *Porter v. State* (1982), Ind.App., 440 N.E.2d 690, 695. However, knowledge may be proved by circumstantial evidence. *Hagood v. State* (1979), Ind.App., 395 N.E.2d 315, 318.

■ The circumstances here are sufficient to infer that Peters knew the nature and content of the material he sold. The record contains testimony that the items displayed in the store included a large num-

ber of magazines, the covers of which depicted various forms of sexual activity, and various sexual paraphernalia in a glass case directly in front of Peters. The magazine which Shannon purchased was sealed in clear plastic; its front and back cover pictures showed two women and one man, nude and engaged in sexual activities. The magazine was "on sale"; the special price was marked on the plastic. Peters rang up the sale and put the magazine in a paper sack. This evidence supports a reasonable inference that Peters knew the nature of the material he was selling.[3]

## III.

### Expert Testimony

■ Peters contends that the State failed to rebut expert testimony presented by the defense regarding the educational value of the magazine and whether it would appeal to the prurient interest. He asserts that he offered the only evidence on those points and argues that his conviction should be reversed.

This Court has previously decided this question adversely to Peters. In *Ford v. State* (1979), Ind.App., 394 N.E.2d 250, 252 (*trans. denied*), we stated that, where the magazine itself was introduced into evidence, it alone was sufficient evidence for a determination of obscenity. The magazine which Shannon purchased from Peters was introduced into evidence. The State is not required to present expert testimony; the jury can make its determination based on the material. *See Porter v. State, supra,* 440 N.E.2d at 695. The record contains evidence to support the jury's decision; we will not reweigh that evidence on appeal.

## IV.

### Jury Instructions

■ Peters first contends that the trial court erred in refusing to give the following instruction:

> would indeed be out of touch with reality if he did not know and understand the nature of the object he was selling."
> *Sedelbauer v. State, supra,* 428 N.E.2d at 210.

---

**3.** Chief Justice Givan, in response to a similar argument, has written:

"Any adult human being who could pick up the packages, above described, and sell them to a customer in a store, as above described,

"The state must prove beyond a reasonable doubt that the matter, taken as a whole, lacks serious literary, artistic, political or scientific value." (Supplemental Record, p. 3).

The trial court's refusal to give an instruction tendered by the defendant requires reversal only if the substance of the instruction was required to be given and was not covered adequately by the instructions given. *See Nash v. State* (1982), Ind. App., 433 N.E.2d 807, 811.

In this case, the trial court instructed the jury regarding "reasonable doubt" and the State's duty to prove each element of the crime beyond a reasonable doubt. The jury was instructed that an element of the crime is that the matter distributed be "obscene." Another instruction defined "obscene" matter:

"As defined by law, the term 'matter' in this context includes (1) any book, magazine, newspaper, or other printed or written material, (2) any picture, drawing, photograph, motion picture, or other pictorial representation.

"A matter is 'obscene' as defined by law if:

"1) The average person, applying contemporary community standards, finds that the dominant theme of the matter, taken as a whole, appeals to the prurient interest in sex;

"2) The matter depicts or describes, in a patently offensive way, sexual conduct, and

"3) The matter, taken as a whole, lacks serious literary, artistic, political, or scientific value.

"All three of these tests must be met for the matter to be obscene." (Record, p. 108).

The trial court also instructed the jury in greater detail regarding the three tests for obscenity.[4] Read together, the instructions covered the substance of Peters's tendered instruction; therefore, the trial court did not err in refusing to give it.

Peters also contends that the trial court improperly refused the following instruction:

"I instruct you that, in determining the 'contemporary community standards' in this case, those 'contemporary community standards must be applied by you in accordance with your understanding of the tolerance of the average person in the community.'" (Supplemental Record, p. 5).

He argues that the meaning of his instruction was not conveyed by the following instruction given by the trial court:

"The first test to be applied in determining whether a film or material is obscene is whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest.

"Your must determine whether the material appeals to a prurient interest in sex, for unless it does it cannot be obscene. A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex, or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex, a leering or longing interest. An appeal to prurient interest is an appeal to sexual desire, not an appeal to sexual interest. An interest in sex is normal, but if the material appeals to an abnormal interest in sex, it can appeal to the prurient interest.

"Contemporary community standards are determined by what the community acceptable as a whole in fact finds <u>tolerable</u> . The community as a whole is society at large, and not particular people or particular groups. In this regard, you should consider what is going on, not necessarily

---

4. The instruction which Peters attacks in his brief as being inadequate appears from the record before us to be an instruction which he tendered rather than an instruction given by the trial court.

what ought to be going on. What some people think the community ought or ought not to tolerate is not important, nor is what you, as an individual juror, think is good or bad. It is what people in general, the community as a whole, tolerate that is determinative." (Record, p. 109).

Peters insists that the words "tolerate" and "accept" do not have the same meaning and that the trial court should have given both instructions. As he recognizes, this question was decided adversely to him in *Sedelbauer v. State, supra.* We will follow that precedent; the trial court did not err in refusing to give Peters's tendered instruction.[5]

 Finally, Peters contends that the trial court erred in refusing to give his tendered instruction number 13. Ind.Rules of Procedure, Criminal Rule 8(A) provides:

"In addition to instructions given by the court on its own motion, a party in any cause tried by a jury, before argument, shall be entitled to tender in writing not to exceed ten [10] proposed instructions to be given to the jury. However, the trial court, in its discretion, may fix a greater number in a particular case, which number shall be stated of record by an order book entry made by the court. No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater. Each tendered instruction shall be confined to one [1] relevant legal principle."

The record does not show an entry fixing a greater number of instructions to be tendered. Therefore, Peters cannot claim any error in the trial court's refusal to give his tendered instruction number 13. *Kelsie v. State* (1976), 265 Ind. 363, 354 N.E.2d 219, *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 541.

Affirmed.

HOFFMAN, P.J., and GARRARD, J., concur.

---

**5.** It also should be noted that the trial court's instruction used both "acceptable" and "tolerate". Therefore, the jury was instructed as to both words.