**Ronald E. RICHARDS, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3–883A266.**

Court of Appeals of Indiana, Third District.

April 10, 1984.

Rehearing Denied June 18, 1984.

---

and handed Schneider the video cassette "Girlfriends."

Shortly thereafter, Richards was charged with distributing obscene matter for consideration, IND.CODE § 35–30–10.1–2. Following a jury trial, Richards was convicted and sentenced. Richards appeals from the judgment of conviction.

Richards first contends that "Girlfriends" represents protected expression under the First and Fourteenth Amendments to the Constitution of the United States.

IND.CODE § 35–30–10.1–2 provides as follows:

"Importation, sale, or distribution of obscene materials

Sec. 2. A person who knowingly or intentionally:

(1) sends or brings into Indiana obscene matter for sale or distribution; or

(2) offers to distribute, distributes, or exhibits to another person obscene matter;

commits a Class A misdemeanor."

Materials are considered obscene when:

1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

2) the matter or performance depicts or describes in a patently offensive way, sexual conduct; and

3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

IND.CODE § 35–30–10.1–1(c).

Kenneth R. Scheibenberger, Lebamoff Law Offices, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

On July 8, 1982, Officer Robert Schneider of the Fort Wayne Police Department visited the Cinema Blue Theatre, in Fort Wayne, Indiana. Schneider selected a videotape and approached the cashier. Appellant Ronald Richards rang up the sale

█ Those materials which satisfy this three-prong test for obscenity are not within the area of constitutionally protected speech or press. *Ford v. State*, (1979) Ind. App., 394 N.E.2d 250. *See generally, Miller v. California*, (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; *Sedelbauer v. State*, (1981) Ind., 428 N.E.2d 206, *cert. denied* 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153; *Sedelbauer v. State*, (1983)

Ind.App., 455 N.E.2d 1159; *Peters v. State,* (1983) Ind.App., 449 N.E.2d 311; *McNeal v. State,* (1982) Ind.App., 434 N.E.2d 127.

■ The film "Girlfriends" depicts a series of lesbian encounters. Women are depicted in a graphic manner engaging in acts of masturbation and cunnilingus. At one point in the film a mechanical "vibrator" is employed to stimulate sexual arousal. The material content of this production and the manner in which it is communicated presents sexual conduct in a patently offensive way. Similar materials have been held obscene by this Court and the Supreme Court of Indiana in *Sedelbauer, supra; Peters, supra;* and *McNeal, supra.* Therefore, Richards' contention that this material is protected speech must fail.

■ Richards next contends that the evidence adduced at trial was insufficient to prove that he knowingly or intentionally distributed obscene matter. Before a person can be convicted of distributing obscene material, he must have knowledge of the nature. and contents of the material. *Peters, supra; Porter v. State,* (1982) Ind. App., 440 N.E.2d 690. This requirement, referred to as scienter, may be proved by circumstantial evidence. *Sedelbauer, supra; Hagood v. State,* (1979) Ind.App., 395 N.E.2d 315.

■ In the case at bar, Officer Schneider entered the Cinema Blue Theatre, where he observed magazine racks containing about two hundred fifty magazines wrapped in plastic. The magazine covers graphically depicted "various sex acts being committed by either two females and a male or three females and one male or two females together." A glass case in the room held various sexual paraphernalia. As stated by Chief Justice Givan in *Sedelbauer, supra,* 428 N.E.2d at 210:

"Any adult human being who could pick up the packages, above described, and sell them to a customer in a store, as above described, would indeed be out of touch with reality if he did not know and understand the nature of the object he was selling."

The evidence supports a reasonable inference that Richards knew the nature of the material he was selling.

Richards next contends that the trial court erred in overruling his objection to the court's instruction regarding "contemporary community standards." The court instructed the jury as follows:

"Contemporary community standards are determined by what the community of Allen County, Indiana as a whole in fact finds acceptable. The community as a whole is society at large, and not particular people or particular groups. In this regard, you should consider what is going on, not necessarily what ought to be going on. What some people think the community ought or ought not to tolerate is not important, nor is what you, as an individual juror, think is good or bad. You should judge how the average adult person in this community would view this material."

Richards objected as follows:

"We would also object to paragraph 3, not numbered, Your Honor, in which the court delineates the community standards as being Allen County, and again, we're talking about as a whole finds acceptable and we feel it is inappropriate to limit the county, Allen County, when we're living in a pluralistic society in the State of Indiana and the statute is what is involved, and so, Your Honor, we would object the failure of the court to enlarge the geographical area."

Richards now contends that the trial court should have given his proposed instruction requiring that jurors apply "the contemporary community standards of the State of Indiana."

This particular issue was addressed by the United States Supreme Court in *Jenkins v. Georgia,* (1974) 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642. Justice Rehnquist writing for the Court stated that:

"the Constitution does not require that juries be instructed in state obscenity cases to apply the standards of a hypothetical statewide community. *Miller* approved the use of such instructions;

it did not mandate their use. What *Miller* makes clear is that state juries need not be instructed to apply 'national standards.' We also agree with . . . the trial court's instructions directing jurors to apply 'community standards' without specifying what 'community.' *Miller* held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of 'contemporary community standards' as defined in *Miller* without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller.*" 418 U.S. at 157, 94 S.Ct. at 2753, 41 L.Ed.2d at 648.

As to the equal protection concern that an act could be found to be criminal in one area and not another, the case of *Hamling v. United States,* (1974) 418 U.S. 87, at 104–105, 94 S:Ct. 2887, at 2901, 41 L.Ed.2d 590, at 613, held that:

"[a] juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law. *Stone v. New York, C. & St. L.R. Co.,* 344 U.S. 407, 409, 73 S.Ct. 358, 359, 97 L.Ed. 441 (1953); *Schulz v. Pennsylvania R. Co.,* 350 U.S. 523, 525–526, 76 S.Ct. 608, 609–610, 100 L.Ed. 668 (1956). Our holding in *Miller* that California could constitutionally proscribe obscenity in terms of a 'statewide' standard did not mean that any such precise geographic area is required as a matter of constitutional law."

The issue at bar thus becomes a question of Indiana statutory law. The Indiana statute, IND.CODE § 35–30–10.1–1(c), codifies the *Miller* test for obscenity. *See Miller,* *supra,* at 413 U.S. 24, 93 S.Ct. 2615, 37 L.Ed.2d 431. The statute does not indicate that either a statewide or local standard shall be employed in reference to community standards. This is a general standard, not a geographic one. *United States v. Cutting* (9th Cir.1976) 538 F.2d 835, at 841. It does not necessitate that *any* geographical area be defined and employed in the formula. *Hamling, supra; Cutting, supra.* The purpose of the "community standards" instruction is not to distinguish attitudes in one area from those in another, but rather to distinguish personal or aberrant views from the generalized view of the community at large. An ideal instruction under the Indiana statute would refer to neither a statewide nor local region, but would require that contemporary community standards be determined by what the community as a whole in fact finds acceptable.

■ Thus, when an instruction has been given in terms of a local or county-wide standard, the essence of the question of prejudice is whether the instruction may have led the jury to apply some specialized test that might differ to the defendant's disadvantage from a generalized "average person, applying contemporary community standards" test.

■ An instruction to apply local standards presents reversible error only where the record indicates that the instruction materially affected the deliberations of the jury in a manner prejudicial to the defendant. *See generally, Hamling, supra; Cutting, supra; United States v. Dachsteiner* (9th Cir.1975) 518 F.2d 20.

■ The record does not indicate that this instruction was prejudicial. There is no indication that the people of Allen County are more sensitive to pornography than other Indiana residents. The instruction properly defines the community as society at large, and not as particularly sensitive persons or groups within society. Any error in this regard is therefore harmless.

■ Likewise, the trial court properly excluded "expert testimony" concerning a

statewide standard, and Richards' instruction on this standard. As stated in *Ford v. State, supra,* Ind.App., 394 N.E.2d at 252:

"obscenity is not a subject that lends itself to the traditional use of expert testimony since such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. 'Simply stated, hard core pornography ... can and does speak for itself.'"

There is no need for experts to advise jurors on a fact which is well within the realm of their understanding. As noted earlier, the Indiana statute does not mandate the statewide standard proposed by Richards. Any testimony or instructions in this regard are not required.

■ Richards also claims that the trial court's community standard instruction was erroneous in that it required the jury to find "Girlfriends" acceptable rather than tolerable. This same issue was addressed in *Sedelbauer, supra,* where Chief Justice Givan held that:

"[t]his question raises a specious argument which appellant attempts to support by citing the case of *Miller v. California,* (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419.

\* \* \* \* \* \*

He cites this language for the proposition that the material should be tolerated by the community rather than accepted by the community. Webster's Third New International Dictionary defines the word 'accept', *inter alia,* 'To take without protest: endure or tolerate.' It defines the word 'tolerate', *inter alia,* 'To endure, to put up with.' Appellant has attempted to construct an argument here based upon what we perceive to be unrelated language lifted from context from opinions of the Supreme Court of the United States and has attempted to convince this Court that the trial court should be reversed because of the choice between words, which according to the dictionary are virtually interchangeable. *We hold the trial court did not err in using the word 'accept' in giving in-structions to the jury rather than the word 'tolerate' as requested by the defendant."* (Emphasis added.) 428 N.E.2d at 211.

The trial court's instruction was not erroneous.

Finally, Richards contends that the following instruction given by the trial court is erroneous:

"You must determine whether the material appeals to a prurient interest in sex, for unless it does it cannot be obscene. A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex, or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex, a leering or longing interest. An appeal to prurient interest is an appeal to sexual desire, not an appeal to sexual interest. An interest in sex is normal, but if the material appeals to an abnormal interest in sex, it can appeal to the prurient interest."

Prurient interest has been defined as follows:

"I.e., material having a tendency to excite lustful thoughts. Webster's New International Dictionary (Unabridged, 2nd ed., 1949) defines prurient, in pertinent part, as follows:

'... Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd ...'

\* \* \* \* \* \*

'... A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters....'" *Roth v. United States,* (1957) 354 U.S. 476, at 487, 77 S.Ct. 1304, at 1310, 1 L.Ed.2d 1498, at 1508.

Richards specifically contends that this instruction was prejudicial to him in that it defined "prurient interest" *inter alia* as "an abnormal interest in sex." However, when taken as a whole, this instruction properly states the law. A prurient interest is abnormal to the extent that it is not that interest in sex held by the average adult. This instruction did not infer that jurors should find the film "Girlfriends" appealing to the prurient interest insofar as it depicts lesbian relationships.

Additionally it should be noted that Richards did not object to this instruction at trial, nor was this argument forwarded in his motion to correct errors. He has therefore failed to preserve error in this regard on appeal. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); Ind.Rules of Procedure, Trial Rule 59(D)(2); *Bennett v. State*, (1973) 159 Ind.App. 59, 304 N.E.2d 827.

The judgment of conviction is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.